UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

WAGERLOGIC LIMITED,                                           :

              Plaintiff and Counter-Defendant,   :   Civil Action No. 11 CV 4310

    - against -                                             :   **COUNTER-**
                                                             **STATEMENT OF**
PARAMOUNT DIGITAL                                            :   **FACTS IN SUPPORT**
ENTERTAINMENT, a division of                                    **OF PARAMOUNT'S**
PARAMOUNT PICTURES CORPORATION,           :   **OPPOSITION TO**
                                                             **WAGERLOGIC'S**
          Defendant and Counter-Plaintiff,     :   **MOTION FOR**
                                                             **SUMMARY**
    - against -                                             :   **JUDGMENT**

CRYPTOLOGIC LIMITED and                                      :
GAMING PORTALS LIMITED,
                                                             :
          Third-Party Defendants.
                                                             :

---------------------------------------------------------------- x

## COUNTERSTATEMENT OF FACTS

Defendant Paramount Digital Entertainment, a division of Paramount Pictures Corporation ("Paramount," "Defendant" or "Counter-Plaintiff"), for its Response (the "Response") to the Motion for Partial Summary Judgment (the "Motion") submitted by Plaintiff WagerLogic Limited ("WagerLogic," "Plaintiff" or "Counter-Defendant") and states as follows:

Paramount objects to WagerLogic's Motion and to the Statement of WagerLogic Limited Pursuant to Local Rule 56.1 ("WagerLogic's Rule 56.1 Statement") in their entirety on the grounds that the record requires development, and that WagerLogic's motion is meritless, premature and improperly made without a full and adequate record. Numerous genuine issues of material fact exist as set forth in Paramount's Response. Moreover, Federal Rule of Civil

Procedure 56(d) provides that a nonmovant is entitled to, <u>inter alia</u>, discovery where it shows for specified reasons that the record is not yet complete. <u>See</u> FED. R. CIV. P. 56(d). Subject to and without waiving this objection, Paramount submits the following Counterstatement of Facts to the best of its ability given the absence of any discovery.

1.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.  As set forth in Paramount's Answer, Statement of Counterclaims and Third-Party Complaint[1], WagerLogic purports to be a corporation under the Laws of Cyprus, but on February 28, 2011, WagerLogic notified Paramount that its address for notices is now Marine House, Clanwilliam Place, Third Floor, Dublin 2 Ireland. <u>See</u> Paramount's Complaint, ¶ 9.

2.   Paramount is a Delaware Corporation, with its principle place of business as 5555 Melrose Avenue, Hollywood, CA 90038. <u>See id</u>. at ¶ 8.

3.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. As set forth in Paramount's Complaint and incorporated by reference, Paramount entered into a Merchandising License Agreement (the "License Agreement") with WagerLogic effective December 15, 2008. <u>See id</u>. at ¶¶ 1 and 19.  The License Agreement gave WagerLogic a license to exploit twenty-six (26) of Paramount's most valuable, popular and highly-recognizable theatrical motion pictures (the "Motion Picture Properties").   <u>See</u> License Agreement[2] at §§ 2.1.1 and 2.1.2; <u>see also</u> Paramount's Complaint at ¶¶ 1 and 19.

     a.   As set forth in the License Agreement, WagerLogic was required to create, market and distribute to online customers, by specific dates, gambling-style

---

[1] Paramount's Answer, Statement of Counterclaims and Third-Party Complaint are attached to the Declaration of Sara J. Daugherty ("Decl.") as Exhibit C.  References to the Answer are hereinafter referred to as "Paramount's Answer." References to Paramount's Statement of Counterclaims and Third-Party Complaint are hereinafter referred to as "Paramount's Complaint."
[2] The License Agreement will be submitted as Exhibit A to the Decl.

"Licensed Games" themed to Paramount Motion Picture properties.  See License Agreement, §§ 3.1 and 10.3; see also Paramount's Complaint, ¶ 20.

b.  The License Agreement specified that WagerLogic was required to meet its marketing deadlines ("Marketing Deadlines") which included as its first Marketing Deadline to distribute and commence marketing and offering of sale of a minimum of five (5) Licensed Games themed to Paramount's Motion Picture Properties no later than December 15, 2010 (the "December 15 Marketing Deadline").  See License Agreement, §§ 10.2 and 10.3; see also Paramount's Complaint, ¶ 22.

c.  The License Agreement also specified that WagerLogic was prohibited from "assign[ing], transfer[ing], delegating[ing], or sublicense[ing]" its rights and obligations without the prior written consent of Paramount, in its sole discretion.  See License Agreement, § 18.1; see also Paramount's Complaint, ¶ 24.

d.  Time was of the essence pursuant to Section 15.1 of the License Agreement.  See License Agreement, § 15.1; see also Paramount's Complaint, ¶ 22.

e.  Pursuant to the License Agreement, WagerLogic was also required to pay Paramount date-certain fees for the use of its copyrighted properties.  See License Agreement, § 7.1; see also Paramount's Complaint, ¶ 21.

f.  Specifically, the license agreement required WagerLogic to pay, inter alia, Paramount $250,000 in license fees on or before December 1, 2010.  See

3

License Agreement, § 7.1.1.1.5; see also Paramount's Complaint, ¶¶ 33, 35.

g.  The License Agreement was a minimum guarantee contract, and WagerLogic was required to pay Paramount royalty payments from the Adjusted Gross Receipts earned from the Licensed Games. See License Agreement, § 7.1.2; see also Paramount's Complaint, ¶¶ 21.

h.  The License Agreement also required WagerLogic to pay a Future Picture Guarantee of $250,000 on or before December 1, 2010 for use of the Future Pictures. See License Agreement, § 7.1.1.2; see also Paramount's Complaint, ¶¶ 33, 35.

i.  WagerLogic was also required to obtain professional liability insurance. See License Agreement, § 14; see also Paramount's Complaint, ¶ 25.

j.  As set forth in Section 10.2 of the License Agreement, the parties were required to "cooperate in good faith at all times in an effort to maximize potential distribution of the Licensed Games." See License Agreement, § 10.2; see also Paramount's Complaint, ¶ 23.

k.  Paramount retained extensive approval rights of all Licensed Games. See License Agreement, § 11; see also Paramount's Complaint, ¶ 22.

l.  Section 15.1 of the License Agreement states that "[i]n the event that Licensee [WagerLogic] (i) fails to perform *any* of its obligations under the Agreement, or (ii) breaches any covenant, representation, warranty, or agreement contained herein, Paramount may terminate this Agreement..." See License Agreement, § 15.1. (Emphasis added).

4

m. Section 15.3 states that "[u]pon the expiration of the Term or earlier termination of this Agreement for any of the reasons set forth in Section 15.1 above: (i) *all* rights, licenses, and privileges granted to Licensee hereunder shall automatically cease and revert to Paramount, and Licensee shall execute any and all documents evidencing such automatic reversion." See id. at § 15.3 (Emphasis added).

n. As set forth in Paramount's Complaint and incorporated by reference, Cryptologic Limited, parent of WagerLogic, executed a Guaranty pursuant to which it absolutely and unconditionally guaranteed the "full and timely performance of all obligations of <u>WagerLogic</u> under the terms and conditions of the License Agreement..." See Paramount's Complaint, ¶ 27.

4. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   As set forth in Paramount's Complaint, WagerLogic failed to perform its obligations under the License Agreement on several independent grounds.   Many of these asserted grounds were omitted from WagerLogic's Rule 56.1 Statement, which only refers to paragraphs 1-3 of Paramount's Complaint.   Paramount's Complaint submits the following additional assertions of fact:

a. <u>First</u>, WagerLogic failed to timely pay Paramount $250,000 in license fees due on or before December 1, 2011. See Paramount's Complaint, ¶ 35.

b. <u>Second</u>, WagerLogic failed to timely pay Paramount $250,000 as a Future Picture Guarantee due on or before December 1, 2011. See <u>id</u>.

c. Third, WagerLogic failed to distribute at least five Licensed Games on or before December 15, 2010. See id. at ¶ 37.

d. Fourth, WagerLogic failed to "cooperate in good faith at all times in an effort to maximize potential distribution of the Licensed Games." See id. at ¶ 30.

e. Without notice or explanation, WagerLogic stopped communicating with Paramount on or about September 8, 2010. See Paramount's Complaint, ¶¶ 30 and 39.

f. WagerLogic stopped appearing for weekly scheduled telephone conferences with Paramount to discuss development of the Licensed Games. See id.; see also Paramount's Complaint, ¶ 31, 34.

g. Although Paramount repeatedly telephoned and emailed WagerLogic and Cryptologic to ascertain the reason for their absence, WagerLogic and Cryptologic did not respond to Paramount. See Paramount's Complaint, ¶¶ 31, 34.

h. Although Paramount invoiced WagerLogic in advance of the December 1, 2010 deadline to pay $500,000, WagerLogic never responded to these invoices. See id. at ¶ 33.

i. WagerLogic remained unresponsive to Paramount for over four months, from September 8, 2010 until January 13, 2011. See Paramount's Complaint, ¶ 34.

6

j. During this period of unresponsiveness, WagerLogic breached its license fee payment obligation, its Future Picture Guarantee obligation, and its December 15 Marketing Deadline. <u>See</u> Paramount's Complaint, ¶¶ 35.

k. Even after WagerLogic was notified of its breaches, WagerLogic acknowledged its failure to perform but did not remedy. <u>See</u> Paramount's Complaint, ¶¶ 38-46.

l. <u>Fifth</u>, at a meeting on January 26, 2011, WagerLogic told Paramount that "WagerLogic and Cryptologic were unable to develop and release games for the remaining Motion Picture properties prior to the end of the contractual term, and as a result, WagerLogic and Cryptologic proposed amending the License Agreement." <u>See</u> Paramount's Complaint, ¶ 41.

m. Shortly after the meeting, Paramount sent additional emails stating that WagerLogic had failed to meet its obligations, and as such, that WagerLogic had asked Paramount to amend the License Agreement. <u>See</u> Paramount Complaint, ¶¶ 42-44.

n. <u>Finally</u>, Paramount alleged that WagerLogic, assigned, delegated or transferred its rights and interests in the License Agreement to Gaming Portals Limited ("Gaming Portals"), a separately registered Irish company. <u>See</u> Paramount's Complaint, ¶¶ 59, 65-67.

o. Paramount's never gave WagerLogic prior written consent for the assignment. <u>See</u> <u>id</u>. at ¶¶ 61-63.

7

p.  Gaming Portals, not WagerLogic, sent a payment to Paramount's bank in New York on February 25, 2011 after Paramount had already terminated the License Agreement.  See id. at ¶ 65; see also Decl., Exhibit H.

q.  Gaming Portals sent Paramount a royalty statement to Paramount listing itself as the licensee.[3]  See Paramount's Complaint, ¶ 66; see also Decl., Exhibit I.

r.  WagerLogic also sent a mass email to several companies on June 28, 2010. See Paramount's Complaint, ¶ 60.  The email stated "Please be advised that from Thursday, 1st July 2010, Wagerlogic [sic] Limited is changed to Gaming Portals Limited, a wholly owned subsidiary of Cryptologic limited" that was registered in Ireland.  See id. The email also provided a new Value Added Tax number for Gaming Portals for use in connection with the License Agreement.  See id.

s.  As set forth in the Daugherty Declaration, WagerLogic identified an "Agreement between WagerLogic Limited and Gaming Portals Limited dated June 30, 2010" in its Rule 26(a) Disclosures dated January 6, 2012. (Emphasis Added.)  See Decl. ¶ 13.  According to WagerLogic, the Agreement between WagerLogic and Gaming Portals – which has not yet been produced – was executed two days after the email which states "Wagerlogic Limited is changed to Gaming Portals Limited."  See Paramount's Complaint, ¶ 60.

---

[3]  Cryptologic responded that the Gaming Portals royalty statement was a "clerical error."  *See* Paramount Complaint at ¶ 71.

t.  The Rule 26(a) disclosures also reference "contracts between one or more Cryptologic Parties and third parties *referencing the intellectual property that is the subject of the [License] Agreement.*" See Decl. ¶ 13.

u.  Cryptologic has not provided a guaranty to Paramount for Gaming Portals' performance. See Paramount's Complaint at ¶ 68.

v.  Gaming Portals denies this Court has jurisdiction over it. See the Answer of Gaming Portals Limited to Paramount's Complaint ("Gaming Portals' Answer")[4] at ¶¶ 12, 15.

w.  As set forth more fully in the complaint, Paramount terminated the License Agreement on February 23, 2011 based on the above allegations. See Paramount's Complaint, ¶¶ 35, 37, 41, 46-49.

x.  Paramount sent WagerLogic an additional termination notice for its incurable breaches of the non-assignment provision of the License Agreement. See id. at ¶¶ 59, 70.

y.  Despite the termination, Paramount has asserted that WagerLogic, Cryptologic and Gaming Portals continue to distribute the Licensed Games featuring Paramount's Motion Picture Properties on the internet. Id. at ¶ 50.

5.  Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   On January 24, 2011, WagerLogic commenced an action against Paramount for declaratory judgment that WagerLogic had full rights under the License Agreement. See the Complaint for Declaratory Judgment by WagerLogic Limited dated June 24, 2011

---

[4] A copy of Gaming Portals Answer is attached to the Decl. as Exhibit G.

9

("WagerLogic's Complaint")[5].   Specifically, WagerLogic claimed that the payment from Gaming Portals, not WagerLogic, cured WagerLogic's breach of the License Agreement.  See id., ¶ 24.   WagerLogic also claimed that Paramount had no right to terminate the License Agreement for its failure to roll out the required Licensed Games. See id., ¶ 28.  Paramount has denied both these allegations.  Paramount Answer, ¶¶ 24, 28.  Section 15.1 of the License Agreement states that "[i]n the event that Licensee [WagerLogic] (i) fails to perform *any* of its obligations under the Agreement, or (ii) breaches any covenant, representation, warranty, or agreement contained herein, Paramount may terminate this Agreement..."  See License Agreement, § 15.1. (Emphasis added.)

6.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   Paragraph 6 of WagerLogic's Rule 56.1 Statement is a purported legal conclusion, not a factual assertion.

7.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   WagerLogic was required to pay $250,000 in licensing fees and $250,000 for use of Future Pictures on or before December 1, 2010.  See License Agreement at §§ 7.1.1.1.5. and 7.1.1.2. Paramount's Complaint alleges that WagerLogic failed to timely pay the license fees or Future Picture Guarantee on or before December 1, 2010, despite Section 15.1 which specifies that time is of the essence.  See Paramount's Complaint, ¶ 35; see also License Agreement at § 15.1.

8.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   WagerLogic's Rule 56.1 Statement cites to Paragraph 35 of Paramount's Complaint for support.  Paragraph 35 of Paramount's Complaint does not state that WagerLogic

---

[5] A copy of WagerLogic's Complaint is attached to the Decl. as Exhibit B.

timely paid the first four payments.  See Paramount Complaint, ¶ 35.   WagerLogic failed to timely pay both the license fees of $250,000 due on or before December 1, 2010 and the Future Picture Guarantee of $250,000 due on or before December 1, 2010.  See Paramount Complaint, ¶ 35.  Paramount received a payment from Gaming Portals, not WagerLogic, on February 25, 2011 eighty-six days after payment was due.  See id. at ¶ 65.

       9.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.  WagerLogic failed to timely pay both the license fees of $250,000 due on or before December 1, 2010 and the Future Picture Guarantee of $250,000 due on or before December 1, 2010.  See id. at ¶ 35.  Paramount received a payment from Gaming Portals, not WagerLogic, on February 25, 2011 eighty-six days after payment was due.  See id. at ¶ 65.

      10.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.  Paramount and WagerLogic exchanged numerous telephone conferences, emails, invoices and in-person meetings regarding the outstanding payments, and Paragraph 10 of WagerLogic's Rule 56.1 Statement represents a cherry-picked sampling of those communications.  See id. at ¶¶39-46.  For example, on January 26, 2011, Paramount's Vice President of International Licensing ("Letizia") and then-Licensing Manager Marvin Neil ("Neil") met with WagerLogic's representatives.  See id. at ¶ 41.  At that meeting, WagerLogic's representatives told Paramount's representatives that WagerLogic and Cryptologic were "unable to develop and release games for the remaining Motion Picture properties prior to the end of the contractual term."  See id at ¶ 41.  The statement that "none of the emails mentions either termination of the Agreement or cure of the alleged late payment" is inaccurate.  Both the February 3 email and February 15 email plainly refer to "termination" on their face.

11. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. As alleged in its complaint, Paramount terminated the License Agreement on February 23, 2011 due to WagerLogic's numerous material breaches and its wholesale failure to perform, including, inter alia, its failure to timely pay Paramount $250,000 in license fees due on or before December 1, 2011; its failure to timely pay Paramount a Future Picture Guarantee due on or before December 1, 2011; its failure to distribute at least five Licensed Games on or before December 15, 2010; and it failure to "cooperate in good faith at all times in an effort to maximize potential distribution of the Licensed Games." See id. at ¶¶ 35, 37, 41, 46-49. Paramount also sent an additional termination notice on August 17, 2011 for WagerLogic's incurable breach of the non-assignment provision of the License Agreement. See id. at ¶ 70.

12. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. WagerLogic's Rule 56.1 Statement relies on Paragraph 23 of WagerLogic's Complaint as a basis for its factual assertions. Paragraph 23 of WagerLogic's Complaint states several purported legal conclusions that Paramount has denied. See Paramount's Answer at ¶ 23. WagerLogic stopped communicating with Paramount from September 8, 2010 until January 13, 2011 – a four-month period of unresponsiveness – during which time Paramount emailed, telephoned and invoiced WagerLogic. See Paramount Complaint, ¶ 34. Following WagerLogic's breaches of its payment obligations and its December 15 Marketing Deadline, Paramount contacted WagerLogic on numerous and repeated occasions, including in-person meetings, and asked WagerLogic to remedy. See id. at ¶ 30-34. Additionally, WagerLogic told Paramount it would be "unable to develop and release games for the remaining Motion Picture properties prior to the end of the contractual term." See id. at ¶ 41.

12

13. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. WagerLogic's Rule 56.1 Statement cites as support Paragraph 5 of WagerLogic's Complaint, which states as a purported legal conclusion that "Paramount had, and continues to have, no right to terminate the License Agreement under the plain terms thereof." Paramount has denied this purported legal conclusion in its Answer. See Paramount Answer, ¶ 5. Paragraph 5 states that "*WagerLogic* timely cured the alleged payment breach within the thirty day cure period." Paramount has also denied this purported legal conclusion in its Answer. See id. at ¶ 5 (emphasis added). Paramount alleges that on February 25, 2011, it received a wire from Irish company Gaming Portals, a non-signatory to the License Agreement, which appears to be distributing Paramount's Motion Picture Properties on the internet. See Paramount Complaint at ¶¶ 65, 67. Paramount has terminated the License Agreement on the grounds that WagerLogic assigned its obligations to Gaming Portals. See id. at 70; see also License Agreement at § 18.1.

14. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. The License Agreement provides that WagerLogic was required to "*distribute and commence the marketing and offering for sale* of at least (1) Licensed Game...themed to a *minimum* of five (5) Existing Pictures not later than two (2) years from" December 15, 2008. License Agreement at § 10.3.1 (emphasis added). Time was of the essence of the License Agreement. Id. at § 15.1. Paramount cannot speak to WagerLogic's so-called efforts to undertake development, especially since WagerLogic's development personnel stopped communicating with Paramount on September 8, 2010 and did not contact Paramount until after Paramount terminated the License Agreement. See Paramount Complaint, ¶¶ 30-34.

15. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. WagerLogic failed to distribute the required number of Licensed Games and had only distributed Licensed Games themed to only three Licensed Games on December 15, 2010. See id. at 35. On January 26, 2011, WagerLogic also advised Paramount that it was "unable to develop and release games for the remaining Motion Picture properties prior to the end of the contractual term." Id. at ¶ 41.

16. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. Paragraph 16 of WagerLogic's Rule 56.1 Statement is a purported legal conclusion regarding remedies, not a factual statement. Paragraph 16 does not cite to the record in support of its legal conclusion. Paramount has denied Section 10.3 was Paramount's only remedy to WagerLogic's failure to release the required Licensed Games. See Paramount's Answer, ¶ 28.

17. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. Paramount terminated the License Agreement on February 23, 2011 due to WagerLogic's numerous material breaches, as discussed herein and at length in Paramount's Complaint. See id. at ¶¶ 35, 37, 41, 46-49, 59, 70. Paragraph 17 also asserts a purported conclusion of fact regarding a perceived contradiction in the record.

18. Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above. The letter was inaccurate because it stated that WagerLogic sent a payment to Paramount on February 24, 2011. See Paramount's Answer at ¶ 24. In fact, Paramount received a wire from Irish company Gaming Portals, a non-signatory to the License Agreement who appears to be distributing Paramount's Motion Picture Properties on the internet without authorization. See Paramount's Complaint at ¶ 65, 67.

19.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   Paragraph 19 of WagerLogic's Rule 56.1 Statement asserts a purported legal conclusion regarding admissions.   Mr. Lieblein made no admissions, but assumed for the sake of argument that even if Cryptologic believed Paramount failed to provide notice, Paramount was entitled to terminate the License Agreement.   Mr. Lieblein reiterated Paramount's position that WagerLogic had had breached on several independent grounds.   In addition, WagerLogic fails to cite any factual basis for the conclusion in Paragraph 19 that the email was "the first written communication" in which Paramount asserted its position regarding the issue of notice.

20.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   Section 6.2 of the License Agreement, which WagerLogic cites as the basis for Paragraph 20 of WagerLogic's Rule 56.1 Statement, states that it is "[s]ubject to the provisions" of the License Agreement.   See License Agreement at § 6.2.   Termination Sections 15.1 and 15.3 were provisions of the License Agreement.   See id. at §§ 15.1 and 15.3.   Section 6.2 also states that the licensing terms for Future Pictures would begin on various dates "unless sooner terminated pursuant to the terms of this Agreement."   See id. at § 6.2.

21.   Paramount repeats and reasserts its objection to WagerLogic's Motion as set forth above.   Paragraph 16 of WagerLogic's Rule 56.1 Statement is a legal conclusion, not a factual statement.   Paramount has denied that it is obligated to make the Future Pictures available.   See Paramount's Answer at ¶ 18.

New York, New York
January 13, 2012

GAGE SPENCER & FLEMING LLP

_____
G. Robert Gage, Jr.
grgage@gagespencer.com
Sara Jane Daugherty
sdaugherty@gagespencer.com
410 Park Avenue, Suite 900
New York, New York 10022
Telephone: (212) 768-4900
Facsimile:  (212) 768-3629

*Attorneys for Paramount Digital Entertainment, a Division of Paramount Pictures Corporation*

16