UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAGERLOGIC LIMITED,

               Plaintiff,

     vs.

PARAMOUNT DIGITAL ENTERTAINMENT, a
division of PARAMOUNT PICTURES
CORPORATION,

               Defendant and
               Counter-Plaintiff,

     vs.

CRYPTOLOGIC LIMITED and GAMING
PORTALS LIMITED,

               Third-Party Defendants.

---

Civil Action No. 11 CV 4310(BSJ)(DCF)

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF
WAGERLOGIC'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**



ANDERSON KILL & OLICK, P.C.
Lawrence Kill (LK-2685)
Jeffrey E. Glen (JG-8277)
1251 Avenue of the Americas
New York, NY  10020
Tel: 212-278-1722

Attorneys for Plaintiff WagerLogic Limited

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................ii

INTRODUCTION............................................................................................................. 1

ARGUMENT.................................................................................................................... 4

    POINT I.  WAGERLOGIC DID NOT REPUDIATE THE AGREEMENT AS A
    MATTER OF LAW: PARAMOUNT'S REQUEST FOR DISCOVERY
    ADDRESSED TO THE POINT SHOULD BE DENIED AND THIS COURT
    SHOULD DECLARE THAT THE AGREEMENT WAS NOT TERMINATED
    FOR ALLEGED LATE PAYMENT........................................................................... 4

    POINT II.  THERE IS NO CONFLICT BETWEEN THE REMEDY FOR
    TOTAL BREACH, WHICH INCLUDES A CURE PERIOD, AND THE
    REMEDY FOR LATE DELIVERY OF A PARTICULAR GAME ............................... 6

    POINT III.  "STRICT COMPLIANCE" IS A RED HERRING WHERE
    PARAMOUNT NEVER SERVED ANY NOTICE OF TERMINATION UNTIL
    FEBRUARY 23, 2011, THUS STARTING THE CURE PERIOD............................. 8

CONCLUSION ................................................................................................................ 9

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.,*
    301 A.D.2d 70, 747 N.Y.S.2d 468 (1st Dep't 2002) ............................................ 4

*Dellicarri v. Hirschfeld,*
    210 A.D.2d 584, 619 N.Y.S.2d 816(3rd Dep't 1994) ............................................ 9

*Filmline (Cross Country) Productions, Inc., v. United Artists Corp.,*
    865 F.2d 513 (2nd Cir. 1989) ............................................................................... 5

*Iskalo Elec. Tower LLC v. Stantec Consulting Services,*
    79 A.D.3d 1605, 916 N.Y.S.2d 373 (4th Dep't 2010) ............................................ 8

*Norcon Power Partners v. Niagara Mohawk Power Corp.,*
    92 N.Y.2d 458, 682 N.Y.S.2d 664 (1998) ............................................................. 4

*Rachmani Corp. v. 9 East 96th Street Apt. Corp.,*
    211 A.D.2d 262, 629 N.Y.S.2d 382 (1st Dep't 1995) ............................................ 6

*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers,*
    706 F.Supp.2d 350 (S.D.N.Y. 2009) .................................................................... 8

*Sea Tow Services International, Inc. v. Pontin,*
    607 F.Supp.2d 378 (E.D.N.Y. 2009) .................................................................... 5

*Seiden Assocs., Inc. v. ANC Holdings, Inc.,*
    959 F.2d 425 (2nd Cir. 1992) ............................................................................... 7

*Stanford Square, L.L.C. v. Nomura Asset Capital Corp.,*
    228 F.Supp.2d 293 (S.D.N.Y. 2002) .................................................................... 6

*Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.,*
    135 A.D.2d 891, 522 N.Y.S.2d 292 (3rd Dep't 1987) ............................................ 5

*Union Ins. Co. v. Central Trust Co.,*
    157 N.Y. 633 (1899) ............................................................................................ 4

*Wolff & Munier, Inc. v. The Whiting-Turner Contracting Co.,*
    946 F.2d 1003 (2nd Cir. 1991) ............................................................................. 5

*XL Specialty Ins. Co. v. Agoglia,* Nos. 08 Civ. 3821, 08 Civ. 4196, 08 Civ. 5252
    (GEL), 2009 WL 1227485 (S.D.N.Y. April 30, 2009) ............................................ 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAGERLOGIC LIMITED,

                                        Plaintiff,

        vs.

PARAMOUNT DIGITAL ENTERTAINMENT, a
division of PARAMOUNT PICTURES
CORPORATION,

                            Defendant and
                            Counter-Plaintiff,

        vs.

CRYPTOLOGIC LIMITED and GAMING
PORTALS LIMITED,

                Third-Party Defendants.

Civil Action No. 11 CV 4310(BSJ)(DCF)

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF
WAGERLOGIC'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

        WagerLogic's complaint and its summary judgment motion seek an

interpretation of two clear and unambiguous provisions of the Merchandising License

Agreement (the "Agreement"):

        Notice of Termination and cure ¶ 15.1

        Remedies available where less than the minimum number of
        games marketed ¶ 10.3

        Instead of addressing these points, Paramount's memorandum of law

essentially argues that fact discovery is required for issues entirely irrelevant to

WagerLogic motion, i.e., that Paramount had the right to terminate based upon an

alleged violation of the Agreement's anti-assignment provision, ¶ 18.1, or that

WagerLogic had repudiated the Agreement and thus had waived any right to such

notice or cure.  These claimed violations, as to which Paramount requests discovery is

nydocs1-981793.3

needed, have nothing to do with the pending summary judgment motion seeking an
interpretation of the plain and unambiguous provisions of the Agreement, which motion
if granted, will significantly reduce the issues required to be litigated.

The essential facts here, relevant to WagerLogic's motion , are not subject
to dispute: when WagerLogic was late in making  the fifth  of a series of license fee
payments, and in making a future pictures guarantee, Paramount served a specific
Notice of Termination.  The notice was served on February 23, 2011 and the payments
were received on February 25, 2011, well within the 30 day cure period.  Indeed,
Paramount has conceded that it served such Notice of Termination and that it received
full payment with the 30 day cure period.

However, Paramount attempts to wiggle out of this dilemma by claiming,
in addition to seeking discovery, that its communications to WagerLogic prior to
February 23 put WagerLogic "on notice … that it had breached its obligations **and it
had been asked to remedy**."  Op. Memo, at 17.[1]  Asking someone to remedy an
alleged breach is the antithesis of terminating for a breach.  See Point II of our Initial
Memo.

Seeking to salvage its argument, Paramount suggests that "notice of
WagerLogic's breach", even if all it amounted to was a request to make the late
payments, was some sort of substantial compliance with its obligation to provide notice
of termination, because WagerLogic "responded to actual notice of its breaches."  Op.
memo at 19.  There is no case law support for such a position, see Point III below, and

---

[1] The Notice of Termination was actually addressed to CryptoLogic, confirming the pattern of Paramount's
treating the WagerLogic parties as interchangeable.  As this practice is relevant only to the purported
termination of the Agreement in August 2011, which is not the subject of the present motion, we do not
discuss the waiver and estoppel implications here.

2

at the same Point we supplement our demonstration in the Initial Memo, at 8–12, that the supposed "notice" prior to February 23 failed to trigger the contractual cure period.

Further, Paramount's arguments that the notice it gave suffices cannot possibly require discovery, because they are predicated entirely on notice allegedly given by Paramount.  If there exist any relevant documents supplementing the communications set forth in WagerLogic's moving papers, those documents are necessarily in Paramount's possession. Paramount's failure to  provide any such documents with its opposition papers evidences that no such documents exist.

In a few paragraphs, Op. Memo at 20-21, Paramount seeks to create an ambiguity regarding remedy that we demonstrated does not exist in our Initial Memo, at 12–18.  We briefly supplement that argument at Point II, below.

Paramount has, we note, come up with one argument that we did not anticipate in our Initial Memo: that WagerLogic "repudiated" the contract and therefore were not entitled to a notice of termination or to a cure period and that Paramount is entitled to discovery on this so-called issue.  Paramount's argument is somewhere on the line between creative and spurious; because it is new, we address in in our opening Point, below.

3

## ARGUMENT

### POINT I.

### WAGERLOGIC DID NOT REPUDIATE THE AGREEMENT AS A MATTER OF LAW: PARAMOUNT'S REQUEST FOR DISCOVERY ADDRESSED TO THE POINT SHOULD BE DENIED AND THIS COURT SHOULD DECLARE THAT THE AGREEMENT WAS NOT TERMINATED FOR ALLEGED LATE PAYMENT

Repudiation is the anticipatory breach of a party's future obligations under

a bilateral contract, As the New York Court of Appeals held, *Norcon Power Partners v.*

*Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463, 682 N.Y.S.2d 664 (1998),

> A repudiation can be either "a statement by the obligor to the
> obligee indicating that the obligor will commit a breach that
> would of itself give the obligee a claim for damages for total
> breach" or "a voluntary affirmative act which renders the
> obligor unable or apparently unable to perform without such
> a breach." (internal quotes from Restatement [Second] of
> Contracts sec. 250).

Repudiation requires that the "breaching party's words or deeds are

unequivocal." *Id.*

Repudiation can also be inferred from conduct "where [a] party, before the

time of performance arrives, puts it out of his power to keep his contract." *Union Ins. Co.*

*v. Central Trust Co.*, 157 N.Y. 633, 643 (1899). Put another way, a party repudiates a

contract when it "voluntary[il]y disables itself from complying with its contractual

obligations." *Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 301 A.D.2d 70,

77, 747 N.Y.S.2d 468 (1st Dep't 2002).

By the very definition of the doctrine, repudiation cannot have occurred in

the instant case since the alleged breach was the failure to make a payment.[2]  Failure

---

[2] The suggestion at page 12 of the Op. Memo that WagerLogic's alleged failure to communicate is
relevant to the instant motion is just wrong.  Paramount has never claimed that WagerLogic's alleged
*footnote continued*

4

to make a payment is not incurable, and where there is a cure period included in the contract – as is true here – it is only "misfeasance which is incurable" that "warrants termination without an opportunity to cure." *Sea Tow Services International, Inc. v. Pontin*, 607 F.Supp.2d 378, 389 (E.D.N.Y. 2009).

The cases relied on by Paramount on this point establish that it is not applicable to this case. In *Wolff & Munier, Inc. v. The Whiting-Turner Contracting Co.*, 946 F.2d 1003 (2nd Cir. 1991), the defaulting party had pulled its crew off of a construction project and stated in writing that it would not complete unless the other party agreed to arbitration; in *Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*, 135 A.D.2d 891, 892, 522 N.Y.S.2d 292 (3rd Dep't 1987) the defaulting party had refused to sign off on a floor plan essential to obtain a liquor license and "refused to perform according to the terms of the agreement".

The case that controls here, as it controls on the issue of Paramount's obligation to serve a complying notice to start the cure period running, is *Filmline (Cross Country) Productions, Inc., v. United Artists Corp.*, 865 F.2d 513, 519 (2nd Cir. 1989). There, in the context of production of a motion picture, the allegedly breaching party was entitled by agreement to a 30 day cure period to modify a script. Since the

---

walking away from the contract from September 8, 2010 until January 13, 2011", *id.*, was a breach for which Paramount sought termination. The Notice of Termination only mentions failure to pay and the failure to market the minimum number of games. It does not mention repudiation. Further, by their own phrasing Paramount concedes that there was no intention by WagerLogic to repudiate rather that for a time, Paramount claims WagerLogic did not live up to ongoing contract obligations. If Paramount can prove that WagerLogic's alleged silence damaged Paramount, which we doubt, it may be entitled to damages, but its very claim of frustration of contract performance is a reaffirmation that the contract remained binding.

5

potential evidence demonstrated that a potential cure was "far from futile", failure to trigger the cure period was fatal to the claim of termination.[3]

While not necessary to the argument, it is also true that repudiation requires an "overt communication of intention" not to perform.  In the case of repudiation inferred from conduct, that conduct must be "a definite and final communication of the intention to forego performance." *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 228 F.Supp.2d 293, 299, 300 (S.D.N.Y. 2002), quoting from *Rachmani Corp. v. 9 East 96th Street Apt. Corp.*, 211 A.D.2d 262, 629 N.Y.S.2d 382 (1st Dep't 1995).  By its own quotations from emails and its own description of communications between the parties, Paramount concedes that the WagerLogic parties intended at all times to make the December 2010 payment and informed Paramount of that intent.  Of course, payment was exactly what happened once Paramount sent its notice of termination triggering the cure period.  Repudiation just is not a genuine factual issue in this case.

## POINT II.

### THERE IS NO CONFLICT BETWEEN THE REMEDY FOR TOTAL BREACH, WHICH INCLUDES A CURE PERIOD, AND THE REMEDY FOR LATE DELIVERY OF A PARTICULAR GAME.  THUS THERE IS NO AMBIGUITY AND PARAMOUNT'S ATTEMPT TO TERMINATE THE AGREEMENT FOR LATE DELIVERY FAILS AS A MATTER OF LAW.

As we demonstrated in the Initial Memo, at 12-18, the remedy reserved by Paramount for failure to comply with a Marketing Date is loss of a game that was not rolled out in time.  See Section 10 of the Agreement[4].  Paramount simply ignores the

---

[3] *Filmline* is a decision after trial, where testimony was given on whether the alleged breaching party had the power to revamp the script within the cure period.  Here, where the alleged breach is failure to send a check there is no factual issue to be resolved.

[4] Arguably, the failure to market is not even a breach of the Agreement as the Agreement contemplates that possibility and provides a specific remedy.  In any event, Article 10 clearly spells out the consequences of not marketing the minimum number of games.

6

plethora of cases we cited that require giving effect to all the relevant provisions of the Agreement, and claims both that extrinsic evidence is required to ascertain the intent of the parties, and that discovery is required to obtain such extrinsic evidence. But the law requires that the provisions of the Agreement be read harmoniously, and as we pointed out, that can and must be done by applying the remedies in Section 10 of the Agreement for missing a marketing date, and the remedies in Section 15 of the Agreement for committing a material breach that would support termination of the agreement, unless cured.

Contrary to Paramount's suggestion that the two remedy provisions are "in conflict", Op. Memo. at 22, they are complementary, and each must be applied to the situation to which it is addressed. See Initial Memo, at 14–15. Paramount's argument on this point rests on its misreading of *Seiden Associates., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 429 (2nd Cir. 1992). *Seiden* addresses the question of how to select one of two different approaches to the "interrelationship" of two contract provisions, not whether both provisions must be reconciled.[5] Since the two remedy provisions of the Agreement in the instant case can each be applied under our interpretation, while one must be eviscerated under the Paramount interpretation, to the extent *Seiden* applies it supports our motion for summary judgment on this point. Because the two remedies can easily be reconciled from the text of the Agreement itself, there is no conflict between them and hence, no ambiguity.

---

[5] Paramount points out that in *Seiden*, "each of two possible readings of one provision would 'denigrate the plain meaning' of the other provision." Op. Memo, internal quote from *Seiden, 959 F.2d at 429.* As set forth in the text above, this hypothesized inconsistency is not applicable to the instant Agreement, where each remedy comfortably fits differing alleged defaults. In any event, it is highly doubtful that *Seiden* on this point survives the *Patsy's Italian Restaurant* decision of the Second Circuit in 2011, see Initial Memo at 14, and a Westlaw search reveals that the quoted phrase has not been repeated in any case since *Seiden.*

7

nydocs1-981793.3

## POINT III.

### "STRICT COMPLIANCE" IS A RED HERRING WHERE PARAMOUNT NEVER SERVED ANY NOTICE OF TERMINATION UNTIL FEBRUARY 23, 2011, THUS STARTING THE CURE PERIOD

At page 19 of the Op. Memo, Paramount contends that strict observance of the notice provisions of the Agreement was not required.  Every case Paramount cites involves incontestable notice that a contract was being terminated, and forgives notice by regular mail or fax rather than by the certified or registered mail called for in the contract.[6]  We do not disagree; as we noted in the Initial Memo, discussing *Rockland Exposition, Inc. v. Alliance of Automotive Service Providers,* 706 F.Supp.2d 350 (S.D.N.Y. 2009), if there is actual notice terminating or not renewing a contract, the method of service, or delivery to one rather than another addressee, is an excusable defect.  But the issue here is not Paramount's using emails rather than the Postal Service; the issue is that Paramount never until February 23, 2011 purported to terminate the Agreement.

Paramount writes that it advised WagerLogic "of its breaches", and "WagerLogic explicitly responded to that notice."  Op. Memo at 19.  Precisely.  Paramount advised WagerLogic that its payment was late, and WagerLogic responded that it would make the payment.  If anything, the email exchanges establish a waiver by Paramount of any position that time was of the essence regarding the December payment, and using one of Paramount's own cases, even oral waiver of a time of the

---

[6] *Iskalo Elec. Tower LLC v. Stantec Consulting Services,* 79 A.D.3d 1605, 916 N.Y.S.2d 373 (4th Dep't 2010) involves service of a notice unmistakably informing the opposite party that the notifying party could not meet a condition of closing.  The notice went to the opposite party's counsel rather than CEO.  Citing the mail cases, the Court quite properly concluded that the notice was effective since it was actually received and no prejudice ensued from serving the substituted recipient.

8

essence provision is effective despite an integration clause. *Dellicarri v. Hirschfeld*, 210 A.D.2d 584, 619 N.Y.S.2d 816 (3rd Dep't 1994).

## CONCLUSION

"[W]here it is clear that the non-moving party cannot defeat the motion by showing facts sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery." *XL Specialty Ins. Co. v. Agoglia*, Nos. 08 Civ. 3821, 08 Civ. 4196, 08 Civ. 5252 (GEL), 2009 WL 1227485, *6 (S.D.N.Y. April 30, 2009).

It is "clear" in the instant case that:

- The WagerLogic parties made the first four scheduled payments under the Agreement on time, totaling $2,000,000 out of a total committed to of $2,500,000.
- When the fifth payment was late, Paramount elected to continue to request payment and not to terminate the Agreement.
- On February 23, 2011 Paramount changed its mind and decided to send a Notice of Termination.
- Having purported to terminate under Section 15 of the Agreement, Paramount set the 30 day cure period running.
- The required sums were paid by February 25, 2011.
- The WagerLogic parties neither by statement or conduct "repudiated" the contract.

9

- By missing the scheduled roll out date for two of twenty-six games, the WagerLogic parties lost their right to roll out two games, but nothing more.

There is no reason to delay adjudication of WagerLogic's motion, for the law, as applied to the uncontestable facts, establishes that the WagerLogic parties cured their late payment, and are not subject to termination of anything more than their right to two games because of their late rollout.  There is every reason to adjudicate WagerLogic's motion now.  By doing so, discovery will not be required on these two issues and discovery can proceed and focus on whether Paramount sustained any monetary damages, and did the WagerLogic parties incur any liability by their practices in marketing the intellectual property licensed by Paramount?

The WagerLogic motion for partial summary judgment should be granted.

Dated:  New York, New York
        January 31, 2012

                                ANDERSON KILL & OLICK, P.C.


                        By:  /s/ Jeffrey E. Glen
                             Lawrence Kill (LK-2685)
                             Jeffrey E. Glen (JG-8277)
                             1251 Avenue of the Americas
                             New York, NY  10020
                             Tel:  212-278-1722

                             Attorneys for Plaintiff WagerLogic Limited

10