# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAGERLOGIC LIMITED,

                                    Plaintiff,

        vs.

PARAMOUNT DIGITAL ENTERTAINMENT, a
division of PARAMOUNT PICTURES
CORPORATION,

                        Defendant and
                        Counter-Plaintiff,

        vs.

CRYPTOLOGIC LIMITED, GAMING PORTALS
LIMITED, WAGERLOGIC CASINO SOFTWARE
LIMITED, and AMAYA GAMING GROUP INC.

                        Third-Party Defendants.

Civil Action No. 11 CV 4310(BSJ)(DCF)

**ANSWER OF PLAINTIFF WAGERLOGIC
LIMITED TO DEFENDANT'S AMENDED
AND SUPPLEMENTAL
COUNTERCLAIMS**

        Plaintiff WagerLogic Limited ("WagerLogic"), answering the amended and

supplemental counterclaims ("AC") of Defendant Paramount Digital Entertainment, a

division of Paramount Pictures Corporation ("Paramount"), states as follows:

        1.      Denies the allegations of paragraph 1 of the AC, but admits that

WagerLogic Ltd. ("WagerLogic"), which is a wholly owned subsidiary of CryptoLogic,

and Paramount entered into a License Agreement (the "Agreement") as defined in

paragraph 3 of WagerLogic's Amended Complaint, and refers the Court to the text of

that Agreement for its terms.

        2.      Denies the allegations of paragraph 2 of the AC.

        3.      Admits that CryptoLogic provided a Guaranty to Paramount in connection

with the Agreement (the "Guaranty"), which Guaranty constitutes Exhibit D to the

Agreement, refers the Court to the text of the Guaranty for its terms, and denies the

remaining allegations of paragraph 3 of the AC.

4.      Denies the allegations of paragraph 4 of the AC.

5.      Denies the allegations of paragraph 5 of the AC.

6.      Denies the allegations of paragraph 6 of the AC.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the AC.

8.      Denies that it maintains its principal place of business at 41-49 Agiou Nicolaou Street, Nimeli Court, Block A, 3rd Floor, Engomi, 2408 Nicosia, Cyprus, admits that it maintains its registered offices at the cited location, and otherwise admits the allegations of paragraph 8 of the AC, with the correction that the current address for notices of WagerLogic is "WagerLogic Ltd c/o CryptoLogic Ltd.," at the street and city address stated in this paragraph of the AC.

9.      Admits the allegations of paragraph 9 of the AC.

10.     Admits the allegations of paragraph 10 of the AC.

11.     Denies that  WagerLogic Casino Software Limited ("WL Casino") maintains its principal place of business at Vincenti Buildings, Suite 358, 14/19 Strait Street, Valletta, VLT 1432, Malta, admits that it maintains its registered offices at the cited location, and otherwise admits the allegations of paragraph 11 of the AC.

12.     Admits the allegations of paragraph 12 of the AC.

13.     Denies, in response to paragraph 13 of the AC, that this Court has jurisdiction over WagerLogic, a corporation that does no business in the United States, pursuant to 28 U.S.C. section 1332(a), admits that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and respectfully refers the

2

nydocs1-990826.1

Court to the responses of the third-party defendants, regarding the remaining allegations of this paragraph.

14.     Denies that this matter presents a federal question, and therefore denies the allegations of paragraph 14 of the AC.

15.     Admits that WagerLogic consented to the personal jurisdiction of this Court over Paramount's claims as alleged in paragraph 15 of the AC, and respectfully refers the Court to the answer of CryptoLogic to the Amended Third-Party Complaint ("ATPC") regarding the remaining allegations of this paragraph.

16.     In response to paragraph 16 of the AC, denies that this Court has personal jurisdiction over WagerLogic pursuant to N.Y. CPLR sections 301 and 302, admits that WagerLogic consented to personal jurisdiction in New York, New York pursuant to the Agreement, and respectfully refers the Court to the answers of the third-party defendants to the ATPC regarding the remaining allegations of this paragraph.

17.     In response to paragraph 17 of the AC, denies that venue over WagerLogic is proper in this district under 28 U.S.C. section 1391(a), admits that WagerLogic consented to venue in this district over Paramount's claims arising out of the Agreement, and respectfully refers the Court to the answers of the third-party defendants to the ATPC regarding the remaining allegations of this paragraph.

18.     As paragraph 18 purports to state propositions of law, no responsive pleading is required.

19.     Admits the allegations of paragraph 19 of the AC.

20.     Admits that in the Agreement Paramount granted an exclusive license to WagerLogic to exploit certain motion pictures, refers the Court to the text of the

3

Agreement for its terms, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the final sentence of paragraph 20 of the AC, and otherwise denies the allegations of paragraph 20 of the AC.

21.    Admits that the Agreement contains provisions relating to creation, marketing and distribution of "Licensed Games," refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 21 of the AC.

22.    Admits that the Agreement contains provisions relating to payments, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 22 of the AC.

23.    Admits that the Agreement contains provisions regarding "Marketing Dates", refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 23 of the AC.

24.    Admits the allegations of paragraph 24 of the AC.

25.    Admits that the Agreement contains provisions in Section 18.1 thereof, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 25 of the AC.

26.    Admits that paragraph 26 of the AC accurately quotes a portion of Section 18.1 of the Agreement, including the specification that the quoted Section applies only to WagerLogic.

27.    Admits that the Agreement contains provisions in Section 14 thereof dealing with insurance, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 27 of the AC.

4

28.     Admits that the Agreement contains provisions in Section 25 thereof relating to costs and fees, refers the Court to the text of the Agreement for its terms, denies that WagerLogic has any obligations under Section 25 of the Agreement, and otherwise denies the allegations of paragraph 28 of the AC.

29.     Denies the allegations of paragraph 29 of the AC.

30.     Admits that Cryptologic executed a Guaranty of the "full and timely performance of all of the obligations of WagerLogic under the terms and conditions of the License Agreement" and otherwise denies the allegations of paragraph 30 of the AC.

31.     Admits that Paragraph 31 of the AC accurately quotes a portion of Section 30 of the Agreement.

32.     Denies the allegations of paragraph 32 of the AC, and refers the Court to the Guaranty for the text thereof.

33.     Denies the allegations of paragraph 33 of the AC.

34.     Denies the allegations of paragraph 34 of the AC.

35.     Admits that on June 30, 2010, WagerLogic entered into an agreement with Gaming Portals Limited ("GPL"), hereinafter referred to as the "June 30 Agreement", refers the Court to the text of the June 30 Agreement for its terms, and otherwise denies the allegations of paragraph 35 of the AC.

36.     Admits that on June 30, 2010, WagerLogic entered into the June 30 Agreement, refers the Court to the text of the June 30 Agreement for its terms, and otherwise denies  the allegations of paragraph 36 of the AC.

37.     Admits the allegations of paragraph 37 of the AC.

5

38.     Denies the allegations of paragraph 38 of the AC.

39.     Admits the allegations of paragraph 39 of the AC, and alleges that no written consent is required for any assignment, transfer, delegation and/or sublicense to any company owned or controlled by CryptoLogic.

40.     Admits that Paramount did not give written consent for an assignment, transfer, delegation and/or sublicense of its rights and obligations to GPL, and otherwise denies the allegations of paragraph 40 of the AC.

41.     Denies the allegations of paragraph 41 of the AC.

42.     Admits the allegations of paragraph 42 of the AC.

43.     Denies the allegations of paragraph 43 of the ATPC, and avers that CryptoLogic guaranteed the performance of its subsidiaries' performance under the Licensing Agreement.

44.     Admits that on July 1, 2010, GPL entered into an agreement with WL Casino, hereinafter referred to as the "July 1 Agreement", refers the Court to the text of the July 1 Agreement for its terms, and otherwise denies the allegations of paragraph 44 of the AC.

45.     Admits that on July 1, 2010, GPL entered into the July 1 Agreement, refers the Court to the text of the July 1 Agreement for its terms, and otherwise denies the allegations of paragraph 45 of the AC.

46.     Admits that on July 1, 2010, GPL entered into the July 1 Agreement, refers the Court to the text of the July 1 Agreement for its terms, and otherwise denies the allegations of paragraph 46 of the AC.

6

47.     Admits that on July 1, 2010, GPL entered into the July 1 Agreement, refers the Court to the text of the July 1 Agreement for its terms, and otherwise denies the allegations of paragraph 47 of the AC.

48.     Denies the allegations of paragraph 48 of the AC.

49.     Denies the allegations of paragraph 49 of the AC.

50.     Admits the allegations of paragraph 50 of the AC, and alleges that no written consent is required for any assignment, transfer, delegation and/or sublicense to any company owned or controlled by CryptoLogic.

51.     Admits that Paramount did not give written consent for an assignment, transfer, delegation and/or sublicense of its rights and obligations to WL Casino, and otherwise denies the allegations of paragraph 51 of the AC.

52.     Denies the allegations of paragraph 52 of the AC.

53.     Admits the allegations of paragraph 53 of the AC.

54.     Denies the allegations of paragraph 52 of the AC.

55.     Denies the allegation of paragraph 55 of the AC that "unauthorized transactions" occurred, denies the allegations against WagerLogic of paragraph 55 of the AC, and on information and belief denies the allegations against CryptoLogic, WL Casino and GPL of paragraph 55 of the AC

56.     Denies the allegations of paragraph 56 of the AC.

57.     Denies the allegation of paragraph 57 of the AC.

58.     Denies the allegations of paragraph 58 of the AC.

59.     Admits the allegations of paragraph 59 of the AC.

7

60.     Denies the allegations of paragraph 60 of the AC, and refers the Court to the Agreement regarding the number of Licensed Games to be released and the consequences in the event less were released.

61.     Denies the allegations of paragraph 61 of the AC.

62.     Denies the allegations of paragraph 62 of the ATPC.

63.     Denies the allegations of paragraph 63 of the AC.

64.     Admits that neither WagerLogic nor CryptoLogic made, on or before December 1, 2010, the payments for license fees for Existing Pictures and rights to Future Motion Picture properties, which are alleged by Paramount in paragraph 64 of the AC to have been due by the referenced date, avers that payments in full were timely made during the "cure" period specified in the Agreement, and otherwise denies the allegations of paragraph 64 of the AC.

65.     Admits that Steve Quintin, an employee of CryptoLogic Inc., received an email from one Marvin Neil on December 15, 2010, refers the Court to the text of that email for the contents thereof, denies knowledge or information sufficient to form a belief as to Mr. Neil's "perplexity," and otherwise denies the allegations of paragraph 65 of the AC.

66.     Denies the allegations of paragraph 66 of the AC.

67.     Denies the allegations of paragraph 67 of the AC.

68.     Denies that, as alleged in paragraph 68 of the AC, Steve Quintin was "CryptoLogic's Director of Project Management" in January 2011, states affirmatively that Mr. Quintin was employed in January 2011 by CryptoLogic Inc., a Canadian subsidiary of CryptoLogic Ltd., admits that Mr. Quintin received an email from Luke

8

Letizia on January 12, 2011, and refers the Court to the text of that email for the contents thereof.

69.    Admits that Mr. Quintin received emails from Letizia on January 13 and January 19, states affirmatively that Mr. Quintin responded by emails dated January 13 and January 20, 2011, refers the Court to the text of those emails for the contents thereof, and otherwise denies the allegations of paragraph 69 of the AC.

70.    Admits that a meeting occurred in London on January 26, 2011, attended by Messrs. Letizia, Neil, Quintin, and Mr. Ian Price, states affirmatively that the subjects discussed at that meeting were the development of the Future Pictures and possible alterations in some of the terms of the licensing agreement as it applied to the development of some of the Existing Pictures, and otherwise denies the allegations of paragraph 70 of the AC.

71.    Admits that Mr. Quintin received an email from Mr. Letizia on February 3, 2010, refers the Court to the text of that email for the contents thereof, and otherwise denies the allegations of paragraph 71 of the AC.

72.    Admits that there was an exchange of emails between Mr. Letizia and Mr. Quintin on February 9 and 11, 2011, refers the Court to the text of those emails for the contents thereof, and otherwise denies the allegations of paragraph 72 of the AC.

73.    Admits that there was an exchange of emails between Mr. Letizia and Mr. Quintin on February 15, 2011, refers the Court to the text of those emails for the contents thereof, affirms that Mr. Letizia in his email informed WagerLogic that Paramount can give WagerLogic 24 more hours before sending out the termination

9

letter, denies knowledge or information regarding Mr. Letitia's "hopes" and otherwise denies the allegations of paragraph 73 of the AC.

74.     Denies the allegations of paragraph 74 of the AC.

75.     Denies the allegations of paragraph 75 of the AC.

76.     Admits that by February 23, 2011, neither Wagerlogic nor CryptoLogic had released any additional Licensed Games themed to the Paramount properties, neither WagerLogic nor CryptoLogic had presented to Paramount any finally approved candidates for additional games, and otherwise denies the allegations of paragraph 76 of the AC.

77.     Denies the allegations of paragraph 77 of the AC.

78.     Denies the allegations of paragraph 78 of the AC.

79.     Admits that three Licensed Games themed to Paramount's Motion Picture properties continue to be distributed on the internet, and otherwise denies the allegations of paragraph 79 of the AC.

80.     Denies the allegations of paragraph 80 of the AC.

81.     Admits that on February 24, 2011, WagerLogic, using an account maintained in the name of its sister company GPL, caused $500,000 to be sent to Paramount, which funds were received by Paramount February 25, 2011, and otherwise denies the allegations of paragraph 81 of the AC.

82.     Admits that WagerLogic sent a letter dated March 8, 2011 to Paramount in which, *inter alia*, WagerLogic specifically denied that it had ever received a notice of breach prior to the notice of termination, and in any event timely cured any alleged

10

breach, refers the Court to the text of that letter for the contents thereof, and otherwise denies the allegations of paragraph 82 of the AC.

83.     Admits that WagerLogic sent a letter dated March 8, 2011 to Paramount in which, inter alia, WagerLogic specifically denied that it had ever received a notice of breach prior to the notice of termination, and in any event timely cured any alleged breach, refers the Court to the text of that letter for the contents thereof, and otherwise denies the allegations of paragraph 83 of the AC.

84.     Admits that WagerLogic sent a letter dated March 8, 2011 to Paramount refers the Court to the text of that letter for the contents thereof, notes that an allegation of what the letter did not contain is surplusage that requires no response, and thus otherwise denies the allegations of paragraph 84 of the AC.

85.     Admits that WagerLogic sent a letter dated March 8, 2011 to Paramount refers the Court to the text of that letter for the contents thereof, notes that an allegation of what the letter did not contain is surplusage that requires no response, and thus otherwise denies the allegations of paragraph 85 of the AC.

86.     Admits that Paramount sent a letter dated August 17, 2011 to WagerLogic, refers to the Court to the text of that letter for the contents thereof, and otherwise denies the allegations of paragraph 86 of the AC.

87.     Denies the allegations of paragraph 87 of the AC.

88.     Admits that CryptoLogic responded to the letter of August 17, 2011, by letter dated August 25, 2011, in which it denied that there had been any assignment of rights and obligations in violation of the Agreement, refers the Court to the text of that

11

letter for the contents thereof, and otherwise denies the allegations of paragraph 88 of the AC.

89.     Admits that CryptoLogic sent a letter August 25, 2011 to Paramount, refers the Court to the text of that letter for the contents thereof, notes that an allegation of what the letter did not contain is surplusage that requires no response, and thus otherwise denies the allegations of paragraph 89 of the AC.

90.     Denies the allegations of paragraph 90 of the AC.

91.     Admits that WagerLogic sent an email dated June 28, 2010 to a number of persons and entities, including Paramount, informing the recipients that "from Thursday, 1st July, Wagerlogic Limited is changed to Gaming Portals Limited, a wholly owned subsidiary of Cryptologic Limited," admits that this email put Paramount on notice of the contents thereof, and otherwise denies the allegations of paragraph 91 of the AC.

92.     Denies the allegations of paragraph 92 of the AC, and alleges affirmatively that as a publicly traded company CryptoLogic on occasion, and in 2011, received expressions of interest from potential purchasers and investors.

93.     Denies the allegations of paragraph 93 of the AC.

94.     Admits the allegations of paragraph 94 of the AC.

95.     Denies the allegations of paragraph 95 of the AC.

96.     Denies knowledge or information sufficient to admit or deny the allegations of paragraph 96 of the AC.

97.     Denies knowledge or information sufficient to admit or deny the allegations of paragraph 97 of the AC.

12

98.    Denies knowledge or information sufficient to admit or deny the

allegations of paragraph 98 of the AC

99.    Admits the allegations of paragraph 99 of the AC.

100.    Denies the allegations of paragraph 100 of the AC.

101.    Admits the allegations of paragraph 101 of the AC.

102.    Denies the allegations of paragraph 102 of the AC.

103.    Admits the allegations of paragraph 103 of the AC.

104.    Denies the allegations of paragraph 104 of the AC.

105.    Denies the allegations of paragraph 105 of the AC.

106.    Denies the allegations of paragraph 106 of the AC.

107.    Denies the allegations of paragraph 107 of the AC.

108.    Denies the allegations of paragraph 108 of the AC.

109.    Denies knowledge or information sufficient to admit or deny the allegations

of paragraph 109 of the AC.

110.    Denies knowledge or information sufficient to admit or deny the allegations

of paragraph 110 of the AC.

111.    Denies knowledge or information sufficient to admit or deny the allegations

of paragraph 111 of the AC.

112.    Denies knowledge or information sufficient to admit or deny the allegations

of paragraph 112 of the AC.

113.    Denies knowledge or information sufficient to admit or deny the allegations

of paragraph 113 of the AC.

13

114.   Denies knowledge or information sufficient to admit or deny the allegations of paragraph 114 of the AC.

115.   Denies the allegations of paragraph 115 of the AC.

116.   Admits that unlike the alleged provisions of the Chartwell Agreement, nothing in the Licensing Agreement purports to deal with a change of a controlling interest of CryptoLogic, and accordingly neither CryptoLogic nor Amaya sought nor needed to seek consent of Paramount to the purchase by Amaya of a majority of the stock of CryptoLogic, and otherwise denies the allegations of paragraph 116 of the AC.

117.   Denies information or belief sufficient to admit or deny the allegations of paragraph 117 of the AC.

118.   Admits the allegations of paragraph 118 of the AC, but denies that any consent was required under the License Agreement.

119.   Denies the allegations of paragraph 119 of the AC.

120.   Wagerlogic repeats and realleges the admissions and denial contained in paragraphs 1 – 119 as if fully restated herein.

121.   Admits the allegations of paragraph 121 of the AC.

122.   Admits the allegations of paragraph 122 of the AC.

123.   Denies the allegations of paragraph 123 of the AC.

124.   Denies the allegations of paragraph 124 of the AC, and avers that no written approval is required for any assignment, transfer, delegation, and/or sublicensing to any company owned or controlled by CryptoLogic.

14

125.   Admits that paragraph 125 of the AC accurately quotes a portion of Section 18.1 of the Agreement, including the specification that the quoted section applies only to WagerLogic.

126.   Denies the allegations of paragraph 126 of the AC.

127.   Denies the allegations of paragraph 127 of the AC.

128.   Denies the allegations of paragraph 128 of the AC.

129.   Denies the allegations of paragraph 129 of the AC.

130.   Admits that Section 30 contains provisions relevant to CryptoLogic's obligations under the Guaranty, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 130 of the AC.

131.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 131 of the AC.

132.   Denies the allegations of paragraph 132 of the AC.

133.   Denies the allegations of paragraph 133 of the AC.

134.   Admits that the Agreement contains provisions relevant to the due date of certain payments, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 134 of the AC.

135.   Denies the allegations of paragraph 135 of the AC.

136.   Admits that the Agreement contains provisions relevant to the due date for release of certain Licensed Games, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 136 of the AC.

15

137.    Admits that the Agreement contains provisions relevant to good faith and fair dealing, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 137 of the AC.

138.    Denies the allegations of paragraph 138 of the AC.

139.    Denies the allegations of paragraph 139 of the AC.

140.    Denies the allegations of paragraph 140 of the AC.

141.    WagerLogic repeats and realleges the foregoing admissions and denials as if fully restated herein.

142.    Denies the allegations of paragraph 142 of the AC.

143.    Admits that the License Agreement is in full force and effect, that Licensed Games continue to be publicly distributed on the internet, and otherwise denies the allegations of paragraph 143 of the AC.

144.    Denies the allegations of paragraph 144 of the AC.

145.    Denies knowledge or information sufficient to admit or deny the allegation of paragraph 145 of the AC.

146.    Admits that there is a substantial controversy between the parties concerning the purported termination of the Agreement, and otherwise denies the allegations of paragraph 146 of the AC.

147.    Admits that this controversy is of a substantial nature, and otherwise denies the allegations of paragraph 147 of the AC.

148.    Admits that the Agreement contains a Section 16, refers the Court to the text of the Agreement for its terms, and otherwise denies the allegations of paragraph 148 of the AC.

16

149.   Admits that Paramount seeks a declaratory judgment as stated in
paragraph 149 of the AC, and otherwise denies the allegations of this paragraph.

150.   WagerLogic repeats and realleges the foregoing admissions and denials
as if fully restated herein.

151.   Denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 151 of the AC.

152.   Denies the allegations of paragraph 152 of the AC.

153.   Admits that Licensed Games continue to be publicly distributed on the
internet, and otherwise denies the allegations of paragraph 153 of the AC.

154.   Admits that Licensed Games continue to be publicly distributed on the
internet, and otherwise denies the remaining allegations of paragraph 154 of the AC.

155.   Admits that GPL, WL Casino and Amaya were not named parties to the
License Agreement, and otherwise denies the allegations of paragraph 155 of the AC

156.   Denies the allegations of paragraph 156 of the AC.

157.   Denies the allegations of paragraph 157 of the AC.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

158.   Paramount alleges that WageLogic violated section 18.1 of the Licensing
Agreement by participating in a series of ministerial modifications in the business
activities of the CryptoLogic group of companies in the summer of 2010.

159.   These modifications are set forth in paragraphs 66 – 73 of the Amended
and Supplemental Complaint of WagerLogic, filed May 29, 2012.

160.   Paramount's claim of termination based on said alleged violation of
section 18.1 of the Agreement was directly contrary to the course of conduct of the

17

parties, as evidenced by various communications, including e-mails and Paramount's Notice of Termination which demonstrate that Paramount knew of, acquiesced in, and approved of performance under the License Agreement by CryptoLogic and/or entities controlled by CryptoLogic. This claim of termination, moreover, was untimely, and was made only after the complaint herein was filed and more than one year after Paramount admits that it received information of an alleged transfer of rights and obligations to GPL. Thus, Paramount's claims are barred, in whole or in part, by the doctrines of estoppel, waiver, and laches.

## Second Affirmative Defense

161.   To the extent any activities alleged by Paramount are subject to the provisions of Section 18.1 of the License Agreement that Section does not preclude or prevent assignment, delegation or transfer of rights and obligations under the Agreement to Cryptologic or to entities controlled entirely by Cryptologic.

162.   As alleged by Paramount, Cryptologic proposed that the formal licensee entering into the Agreement be one of its subsidiaries, which Paramount agreed to on condition that performance be guaranteed by Cryptologic, without which Paramount allegedly would not have entered into the License Agreement. Cryptologic continues to guarantee performance of the Agreement.

163.   Having accepted CryptoLogic as guarantor of its subsidiary's performance, Paramount is estopped from purporting to terminate the Agreement based on assignment, delegation, or transfer of rights and obligations under the Agreement to any other CryptoLogic subsidiary.

## Third Affirmative Defense

18

164.    Paramount alleges that CryptoLogic violated section 18.1 of the Licensing Agreement when a majority of its stock was bought pursuant to a tender offer by Amaya.

165.    The provisions of section 18.1 apply in their terms solely to WagerLogic, and any change in the ownership of a majority of the stock of CryptoLogic, not accompanied by alterations at the WagerLogic level that are prohibited without the consent of Paramount, does not violate section 18.1 of the Licensing Agreement.


## Fourth Affirmative Defense

166.    Paramount's claims against WagerLogic are barred because its own acts and omissions caused the alleged injury and damages complained of in the ATPC.

## Fifth Affirmative Defense

167.    Paramount's claims against WagerLogic arising out of its claimed terminations of the Agreement are barred by the doctrine of ratification.

## Sixth Affirmative Defense

168.    Paramount fails to state a cause of action for money damages against WagerLogic because it has been paid in full to date under the Agreement, and since all the obligations of the licensee required under the Agreement have been performed Paramount has suffered no monetary loss.

## Seventh Affirmative Defense

169.    Paramount has breached the Agreement by erroneously purporting to terminate the agreement, by not extending full good faith cooperation and assistance as required under the Agreement and by engaging in discussions or negotiations with, or

19

entering into an understanding with, a third party concerning the future pictures referenced in the Agreement.

170.    Paramount's breaches of the Agreement relieve WagerLogic of its obligations under the Agreement.

### Eighth Affirmative Defense

171.    On information and belief, prior to entering into the Agreement, Paramount had licensed the rights to develop and distribute Casual Gambling style games themed to one or more of the Future Pictures to a rival of WagerLogic in the internet gaming business.  Such film or films had been licensed to the rival of WagerLogic previously, but such license or licenses were scheduled to terminate on or before May 1, 2012, on which date the Future Pictures became subject to the Agreement pursuant to paragraph 6.2 thereof.

172.    On information and belief, in January or very early in February of 2011, Paramount  signed an extension of the license or licenses referred to in the previous paragraph beyond May 2012, in violation of the exclusive license that Paramount had granted to WagerLogic,

173.    Such extension constituted an anticipatory breach of the Agreement since under the Agreement WagerLogic had exclusive rights to those Future Pictures.

174.    By purporting to extend the rival's license regarding the Future Pictures, or entering into agreements contemplating the extension of the rival's license regarding the Future Pictures, into the period covered by WagerLogic's license, Paramount breached its duty of good faith and fair dealing implied into the Agreement.

20

175.   By breaching its duty of good faith and fair dealing, Paramount became estopped to seek to terminate the Agreement until the completion of the license period related to the Future Pictures.

### Ninth Affirmative Defense

176.   Paramount alleges that the willful public distribution of Licensed Games on the internet themed to Paramount's copyrighted Motion Picture Properties constitutes copyright infringement by CryptoLogic.

177.   To extent, if any, that Paramount claims United States copyrights in the Motion Picture Properties, the distribution of any copyrighted material occurred when Licensed Games were placed on servers that can only be accessed for internet wagering purposes outside of the United States.

178.   Such alleged distribution is not actionable in the courts of the United States.

### Tenth Affirmative Defense

179.   On information and belief, the actions which are alleged to constitute copyright infringement by CryptoLogic do not violate any foreign copyrights possessed by Paramount in the Motion Picture Properties, and to the extent if any that Paramount possesses foreign copyrights in the Motion Picture Properties, alleged violations of such copyrights are not actionable in the courts of the United States.

**WHEREFORE**, WagerLogic demands that the relief requested in its complaint be granted, that the claims contained in the AC be dismissed, that WagerLogic be awarded damages and appropriate injunctive relief arising out of Paramount's breach of its contractual obligations, and that an award be made of fees,

costs, and disbursements, including attorneys' fees pursuant to paragraph 25 of the

Agreement and such other and further relief as the Court deems just and proper.

Dated:   July 11, 2012

By: _____

Lawrence Kill (LK 2685)
Jeffrey E. Glen(JG8277)

Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000

Attorneys for Plaintiff WagerLogic Limited

22