UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAGERLOGIC LIMITED,<br><br>         Plaintiff,<br><br>vs.<br><br>PARAMOUNT DIGITAL ENTERTAINMENT, a division of PARAMOUNT PICTURES CORPORATION,<br><br>         Defendant and Counter-Plaintiff,<br><br>vs.<br><br>CRYPTOLOGIC LIMITED, GAMING PORTALS LIMITED, WAGERLOGIC CASINO SOFTWARE LIMITED, and AMAYA GAMING GROUP INC.<br><br>         Third-Party Defendants. | Civil Action No. 11 CV 4310(BSJ)(DCF)<br><br>**STATEMENT OF WAGERLOGIC LIMITED PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF WAGERLOGIC'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff WagerLogic Limited ("WagerLogic") submits this statement pursuant to Civil Rule 56.1 of the Southern and Eastern Districts in support of its motion for partial summary judgment.

WagerLogic contends that the following is a statement of the material facts as to which there is no genuine issue to be tried.[1]

  1.  WagerLogic is a Cypriot corporation. Amended Complaint ("AC") ¶14. Exh. 2

  2.  Paramount is a Delaware corporation. Answer to Amended Complaint ("AAC") ¶17, Amended Counterclaims ("ACC") ¶7.[2] Exh. 3.

---

[1] Following each citation is the Exhibit number of the cited reference. These numbers refer to the Exhibits attached to the Declaration of Jeffrey E. Glen, filed in support of the Motion for Partial Summary Judgment.

[2] ""ACC" refers to the "Paramount's First Amended and Supplemental Counterclaims & Third-Party Complaint", that commences at page 13 of "Paramount's Answer to WagerLogic's First Amended and

3. Effective December 15, 2008, WagerLogic and Paramount entered into a Licensing Agreement (the "Agreement") pursuant to which Paramount granted to WagerLogic the exclusive license to use intellectual property associated with twenty "existing" and six "future" Paramount motion pictures to develop online casino games based on those pictures.[3] AC ¶ 3, AAC ¶ 3. The Licensing Agreement is Exh. 1.[4]

4. On February 23, 2011, in a letter denominated a "Notice of Termination" addressed to CryptoLogic Limited, the parent company of WagerLogic, (a) Paramount contended that CryptoLogic's failure to make certain license fee payments due December 1, 2010, and to meet certain marketing deadlines involving the Existing Pictures, constituted material breaches of the Licensing Agreement and (b) Paramount purported to terminate the Licensing Agreement. ACC ¶s1-2; the February 23 letter is Exh. 5.

5. The purported February 23, 2011 termination by Paramount was improper since on February 24, 20111, full payment was made during the cure period specified in the License Agreement and termination is not an available remedy for a purported failure to satisfy the Existing Pictures marketing date. AC¶36, Exh. 1

6. On June 24, 2011, WagerLogic commenced this action against Paramount, seeking a declaration that WagerLogic had adequately cured its failure to pay the license fees alleged to be due December 1, 2010 by the payment of $500,000 on February 24, 2011, that Paramount had and has no right to terminate the License

---

Supplemental Complaint & Paramount's First Amended and Supplemental Counterclaims & Third-Party Complaint," filed as Document 47 on the docket sheet of this action.
[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Licensing Agreement.
[4]

2

Agreement based on an alleged breach of the Existing Pictures Marketing Date, and that the Licensing Agreement was not properly terminated and remain in full force and effect. AC ¶6.

7. On October 18, 2011, Paramount filed an answer to the WagerLogic complaint, and annexed thereto a third-party complaint against CryptoLogic Limited ("CryptoLogic), WagerLogic's parent company, and Gaming Portals Limited ("GPL"), WagerLogic's sister company, Docket No. 7.

8. On May 29, 2012, WagerLogic filed an amended complaint realleging the claims in its original complaint, and seeking in addition, *inter alia*, monetary damages arising out of Paramount's refusal to carry out its obligations under the Agreement since February of 2011. Docket No. 44.

9. On June 20, 2012, Paramount filed a single pleading containing an amended answer to the amended WagerLogic complaint and counterclaims, together with amended third-party complaints against CryptoLogic and GPL, and new third-party complaints against WagerLogic Casino Software Limited ("WL Casino") and Amaya Gaming Group Inc. ("Amaya"). This pleading is the AAC and ACC, noted above.

10. This Court has jurisdiction over the claims of WagerLogic against Paramount, and this district is a proper venue for this action, because these parties submitted to the jurisdiction and venue of this Court in the Licensing Agreement. AC ¶s20-22, AAC ¶s20,22.

11.   Under the Licensing Agreement, WagerLogic agreed to pay Paramount an Existing Pictures License Fee of $2,000,000 in five tranches, the final tranche of which was a payment of $250,000 by December 1, 2010, and a Future Pictures Guarantee of $250,000 by December 1, 2010.  Licensing Agreement, sec. 7.1,

12.   WagerLogic made the first four payments required under the License Agreement on or before the required date.  ACC ¶64.

13.   WagerLogic did not make the fifth tranche payment of the Existing Pictures License Fee, or the payment of the Future Pictures Guarantee, by December 1, 2010, as called for in the Licensing Agreement.  ACC ¶64.

14.   After December 1, 2010, the following emails were sent from Paramount to persons within the CryptoLogic group of companies.  In none of the emails did Paramount mention either termination of the Agreement or cure of the alleged late payment.

| Sender | Recipient | Date | Citation |
|---|---|---|---|
| Neil Marvin | Unknown | 12/15/10 | ACC ¶65,[5] |
| Luke Letizia | Steve Quintin | 01/12/11 | ACC ¶68, Exh. 6 |
| Luke Letizia | Steve Quintin | 01/13/11 | ACC ¶69 |
| Luke Letizia | Steve Quintin | 01/19/11 | ACC ¶69 |
| Luke Letitia | Steve Quintin | 02/03/11 | ACC ¶71, Exh. 7 |
| Luke Letitia | Steve Quintin | 02/15/11 | ACC ¶73, Exh. 8 |

---

[5] WagerLogic does not have a copy of this email, which is referenced in the ACC at ¶65. WagerLogic assumes that the contents of the email are accurately described in the ACC.

4

15. The emails listed in ¶13 above typically refer to CryptoLogic, not WagerLogic, as the functional licensee under the Agreement, and view the CryptoLogic companies interchangeably.

    (a) In the January 12, 2011 email, Paramount claims that "there was a payment due from CryptoLogic back on December 1st."

    (b) In the February 3, 2011 email, Paramount discusses "the IP that CryptoLogic licensed from Paramount…"

    (c) In the February 15, 2011 email, Paramount seeks "a response from CryptoLogic."

16. The "Notice of Termination" on its face recites the sending of a "Courtesy copy" to WagerLogic at its Cyprus address, but the claim of breach is addressed solely at CryptoLogic. Exh. 5.

17. The February 23, 2011 "Notice of Termination" was the first document served by Paramount that recited that Paramount was terminating the Licensing Agreement. Exh. 5.

18. In the February 23, 2011 Notice of Termination, Exh. 5, as characterized in Paramount's own pleading, "Paramount finally terminated the License Agreement pursuant to Section 15.1 thereof." AAC ¶78.

19. On February 24, 2011, a payment of $500,000 was remitted by wire transfer from an account in Ireland held by GPL to Paramount, and the payment was received by Paramount February 25, 2011. ACC ¶81. This payment was made and

received within the 30 day cure period provided in paragraph 15.1 of the Agreement. AC ¶36.

20. Under the Licensing Agreement, WagerLogic undertook to develop at least one Casual Gambling style game, as defined in the Licensing Agreement par. 3.2.1, themed to the Property (Licensing Agreement ¶2.1) for each of 5 Existing Pictures, and to distribute, market and offer for sale a minimum of such games by December 15, 2010. Licensing Agreement ¶10.3.1, including by reference the definition of "Effective Date" set forth in the second line of page one of the Licensing Agreement. Exh. 1.

21. By December 15, 2010, WagerLogic had distributed Licensed Games themed to three Existing Pictures. AC ¶39

22. Under paragraph 10.3 of the Agreement, Paramount's sole and exclusive remedy for WagerLogic's failing to meet a particular Existing Picture Marketing Date is to forfeit WagerLogic's rights to use the intellectual property licensed by Paramount regarding that particular picture. Exh. 1.

23. The February 23, 2011 "Notice" from Paramount purported to terminate the entire Agreement because WagerLogic failed to satisfy the minimum release requirements for Licensed Games. The February 23, 2011 "Notice" also proposed certain revisions to the Licensing Agreement, contradicting defendant's assertions that the Agreement had been terminated by WagerLogic's late payment. Exh. 5.

24.     On March 8, 2011, John Loughrey, the CryptoLogic General Counsel and Company Secretary, wrote to Paramount explaining plaintiff's position that it had cured any alleged violation stemming from the December 1, 2010 payment date, and that Paramount had no power to terminate the Licensing Agreement for a failure to comply with an Existing Pictures Marketing Date.  ACC ¶82.

25.     On March 11, 2011, Mark Leiblein of Paramount emailed Mr. Loughrey and David Gavagan, the Chief Executive Officer of CryptoLogic, asserting that the Agreement had been terminated. This email is the first written communication from Paramount to anyone within the CryptoLogic family of companies in which Paramount alleges that the January 12, 2011 email constituted "actual written notice" under the Agreement.  Exh. 9.

26.     The Marketing Dates for Future Picture have not occurred and will not occur until 2014.   Agreement ¶6.2

27.     Paramount is obligated to make the Future Pictures available commencing May 1, 2012, or June 3, 2012, and the license period for the Future Periods runs through the first half of 2016.  Agreement ¶6.2

28.     Paramount has refused to make the Future Pictures available as of the date of this submission.

29.     Paramount's defense and counterclaims that WagerLogic had also breached the anti-assignment provision of the Agreement by alleged assignments to GPL, WL Casino and Amaya, contained in the AAC and ACC, are not relevant to the

7

February 23, 2011 Notice of Termination from Paramount to CryptoLogic, and the issues raised by WagerLogic's motion for partial summary judgment.

Dated:  New York, New York
        July 25, 2012

ANDERSON KILL & OLICK, P.C.

By: /s/ Jeffrey E. Glen
    Lawrence Kill (LK-2685)
    Jeffrey E. Glen (JG-8277)
    1251 Avenue of the Americas
    New York, NY  10020
    Tel:  212-278-1722

Attorneys for Plaintiff WagerLogic Limited

nydocs1-991023.2