UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAGERLOGIC LIMITED,

                              Plaintiff,

        vs.

PARAMOUNT DIGITAL ENTERTAINMENT, a
division of PARAMOUNT PICTURES
CORPORATION,

                      Defendant and
                  Counter-Plaintiff,

        vs.

CRYPTOLOGIC LIMITED, GAMING PORTALS
LIMITED, WAGERLOGIC CASINO SOFTWARE
LIMITED, and AMAYA GAMING GROUP INC.

                  Third-Party Defendants.

---

Civil Action No. 11 CV 4310(BSJ)(DCF)

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF WAGERLOGIC'S PENDING MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Anderson Kill & Olick, P.C.
Lawrence Kill
Jeffrey Glen
1251 Avenue of the Americas
New York, New York 10020
Tel. No. (212) 278-1000
Counsel for Plaintiff WagerLogic Limited

## TABLE OF CONTENTS

**Page**

POINT ONE
PARAMOUNT'S ARGUMENT IN POINT I OF ITS ANSWERING
MEMORANDUM OF LAW THAT IT REQUIRES DISCOVERY
REGARDING ITS CLAIM THAT PLAINTIFF VIOLATED THE ANTI-
ASSIGNMENT PROVISION OF THE LICENSING AGREEMENT IS
IRRELEVANT TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT .......................................................................................1

      A.    A Re-iteration of the Relevant Facts ................................................1

      B.    Point I of Paramount's Memorandum of Law is
           Irrelevant ........................................................................................2

POINT TWO
WAGERLOGIC DID NOT REPUDIATE THE AGREEMENT AS A
MATTER OF LAW: PARAMOUNT'S REQUEST FOR DISCOVERY
ADDRESSED TO THE POINT SHOULD BE DENIED AND THIS
COURT SHOULD DECLARE THAT THE AGREEMENT WAS NOT
TERMINATED FOR ALLEGED LATE PAYMENT .................................................3

POINT THREE
THERE IS NO GENUINE ISSUE OF MATERIAL FACT TO
CONTROVERT PLAINTIFF'S ASSERTION THAT NO NOTICE OF
TERMINATION WAS PROVIDED PRIOR TO
FEBRUARY 23, 2011 ..........................................................................................6

POINT FOUR
THERE IS NO CONFLICT BETWEEN THE REMEDY FOR TOTAL
BREACH, WHICH INCLUDES A CURE PERIOD, AND THE
REMEDY FOR LATE DELIVERY OF A PARICULAR GAME.
THUS THERE IS NO AMBIGUITY AND PARAMOUNT'S
ATTEMPT TO TERMINATE THE AGREEMENT FOR LATE
DELIVERY FAILS AS A MATTER OF LAW ..........................................................8

POINT FIVE
THIS ACTION IS NOT BARRED BASED ON INCONSISTENT
CLAIMS ...............................................................................................................9

CONCLUSION ...............................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*,
    301 A.D.2d 70, 747 N.Y.S.2d 468 (1st Dep't 2002)......................................................4

*Filmline (Cross Country) Productions, Inc., v. United Artists Corp.*,
    865 F.2d 513 (2nd Cir. 1989)................................................................................4-5, 7

*Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract
    Society of N.Y., Inc.*, 2012 U.S. Dist., Lexis 9569 (S.D.N.Y. 2012) ......................9-10

*International Top Sports S.A. v. Pan Am. Sports Network Int'l*,
    No. 01-CV-9668(HB), 2002 WL 72935 (S.D.N.Y. Jan. 17, 2002)................................7

*McCaskey Davies & Associates v. New York City Health & Hospitals
    Corp.*,
    59 N.Y.2d 755 (1983) ............................................................................................. 6-7

*Norcon Power Partners v. Niagara Mohawk Power Corp.*,
    92 N.Y.2d 458, 682 N.Y.S.2d 664 (1998)............................................................3-4, 5

*Patsy's Italian Restaurant, Inc. v Banas*,
    658 F.3d 254 (2nd Cir. 2011) .....................................................................................9

*Rachmani Corp. v. 9 East 96th Street Apt. Corp.*,
    211 A.D.2d 262, 629 N.Y.S.2d 382 (1st Dep't 1995)....................................................5

*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of
    New Jersey*,
    706 F. Supp.2d 350 (S.D.N.Y. 2009).........................................................................7

*Sea Tow Services International, Inc. v. Pontin*,
    607 F.Supp.2d 378 (E.D.N.Y. 2009)..........................................................................4

*Seiden Associates, Inc. v. ANC Holdings, Inc.*,
    959 F.2d 425 (2nd Cir. 1992)...................................................................................9

*Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*,
    228 F.Supp.2d 293 (S.D.N.Y. 2002)..........................................................................5

*Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*,
    135 A.D.2d 891, 522 N.Y.S.2d 292 (3rd Dep't 1987)..................................................4

*Union Ins. Co. of Phila. v. Central Trust Co.*,
    157 N.Y. 633 (1899) ..................................................................................................4

*Wolff & Munier, Inc. v. The Whiting-Turner Contracting Co.*,
    946 F.2d 1003 (2nd Cir. 1991)..................................................................................4

*XL Specialty Ins. Co. v. Agoglia*,
    Nos. 08 Civ. 3821, 08 Civ. 4196, 08 Civ. 5252 (GEL), 2009 WL
    1227485 (S.D.N.Y. Apr. 30, 2009)...........................................................................10

ii

### TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

**Other Authorities**

FRCP Rule 56(g) ..................................................................................................9

nydocs1-995743.1

Plaintiff respectfully submits this Memorandum of Law in reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Memo").

**POINT ONE**

**PARAMOUNT'S ARGUMENT IN POINT I OF ITS ANSWERING MEMORANDUM OF LAW THAT IT REQUIRES DISCOVERY REGARDING ITS CLAIM THAT PLAINTIFF VIOLATED THE ANTI-ASSIGNMENT PROVISION OF THE LICENSING AGREEMENT IS IRRELEVANT TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**A.     A Re-iteration of the Relevant Facts**

CryptoLogic Limited ("CryptoLogic") is a company in the business of providing games for internet gambling.  Through its WagerLogic Limited subsidiary ("WagerLogic"), CryptoLogic entered into a Licensing Agreement (the "Agreement") with Paramount Digital Entertainment ("Paramount") to create and exploit on-line interactive casual gambling style games (defined in Agreement sec. 3.2.1) themed to Paramount motion pictures.

By December of 2010, CryptoLogic through WagerLogic had created and released games themed to the movies *Braveheart, Ferris Beuller's Day Off,* and *Forrest Gump.*  It had paid Paramount through WagerLogic and another of its subsidiaries, Gaming Portals Limited ("GPL") $1,750,000 for the right to do so.

As of mid-December of 2010, CryptoLogic had missed a final $250,000 final tranche of the "Existing Pictures License Fee" call for in the Agreement, Sec. 7.1.1, and a $250,000 "Future Pictures Guarantee", Sec. 7.1.1.2.  It also had not rolled out two additional themed games, the release of which was required by December 15, 2010, under the Agreement.

Paramount purported to terminate the Agreement by a notice addressed to CryptoLogic emailed on February 23, 2011.  Plaintiff views this notice as ineffective,

because the payment deficit was cured within thirty days of the notice, as expressly provided for in the Agreement, and because the contracted penalty for late roll out of a game is loss of the license for that game. See WagerLogic's initial memorandum of law in support of its motion for summary judgment, ("P. Memo") Points II and III.

Because there are no genuine issues of material fact regarding the notice of termination and its effect, WagerLogic made the instant motion for summary judgment.

### B.    Point I of Paramount's Memorandum of Law is Irrelevant.

The thrust of Paramount's answering papers is that for a completely separate reason – an alleged violation of the anti-assignment section of the Agreement (section 18) -- Paramount terminated the Agreement. This purported termination occurred in August of 2011, a full six months after the notice of termination that is the only subject of the motion for summary judgment[1].

The opposition by Paramount largely ignores the issues raised by plaintiff and instead devotes the bulk of its opposition to this unrelated claim of assignment for which it claims it needs discovery. Paramount argues that the court should not consider in the interim plaintiff's pending motion seeking an interpretation of unambiguous provisions of the Agreement. The assignment claim is nothing more than a distraction and is being used quite simply to deflect the court from considering issues which traditionally are matters of law for the court to decide.

Indeed, Paramount's position seeking to delay any decision on contract interpretation makes no practical sense. A decision by this Court at this stage of the litigation that Paramount had no right to terminate the Agreement based on the alleged

---

[1] The so-called August 2011 termination based on the "assignment" claim was made by Paramount only after this action commenced and clearly is an afterthought to devise additional defenses.

2

failure to timely make payment or to market 5 motion pictures will significantly reduce discovery and materially advance this litigation.

As the facts as to (1) the payment made and (2) the number of pictures marketed are not in dispute, the Court can and should apply the clear unambiguous contract language to those undisputed facts.  This will materially advance the litigation and enable the parties to focus on issues such as assignment as to which there may be genuine issues of material fact.  Paramount, of course, can continue to seek discovery on its assignment claim, but it should not be permitted to use such claim to avoid judicial interpretation of clear and unambiguous terms of the Agreement.[2]

### POINT TWO

**WAGERLOGIC DID NOT REPUDIATE THE AGREEMENT AS A MATTER OF LAW: PARAMOUNT'S REQUEST FOR DISCOVERY ADDRESSED TO THE POINT SHOULD BE DENIED AND THIS COURT SHOULD DECLARE THAT THE AGREEMENT WAS NOT TERMINATED FOR ALLEGED LATE PAYMENT**

Repudiation is the anticipatory breach of a party's future obligations under a bilateral contract,  As the New York Court of Appeals held, *Norcon Power Partners v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463, 682 N.Y.S.2d 664 (1998),

> A repudiation can be either "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach" or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." (internal quotes from Restatement [Second] of Contracts sec. 250).

---

[2] As a matter of fact, Paramount's assignment claim is illusory.  Paramount at all times was fully aware and acquiesced in dealing directly with CryptoLogic and its subsidiaries (e.g., plaintiff WagerLogic and Third Party defendant Gaming Portals Limited) in connection with performance under the Agreement. This is borne out by Paramount's own emails, Paramount's acceptance of payments from a CryptoLogic subsidiary (not plaintiff WagerLogic) and by the uncontested fact that Paramount's very Notice of Termination of the Agreement upon which it relies was directed to CryptoLogic with courtesy copies to two of its subsidiaries.

3

Repudiation requires that the "breaching party's words or deeds are unequivocal." *Id.*

Repudiation can also be inferred from conduct "where [a] party, before the time of performance arrives, puts it out of his power to keep his contract." *Union Ins. Co. of Phila. v. Central Trust Co.*, 157 N.Y. 633, 643 (1899). Put another way, "a party repudiates a contract when it 'voluntar[il]y disable[s] itself from complying' with its contractual obligations." *Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 301 A.D.2d 70, 77, 747 N.Y.S.2d 468 (1st Dep't 2002).

By the very definition of the doctrine, repudiation cannot have occurred in the instant case since the alleged breach was the failure to make a payment. Failure to make a payment is not incurable, and where there is a cure period included in the contract – as is true here – it is only "misfeasance which is incurable" that "warrants termination without an opportunity to cure." *Sea Tow Services Int'l, Inc. v. Pontin*, 607 F.Supp.2d 378, 389 (E.D.N.Y. 2009).

The cases relied on by Paramount on this point establish that it is not applicable to this case. In *Wolff & Munier, Inc. v. The Whiting-Turner Contracting Co.*, 946 F.2d 1003 (2nd Cir. 1991), the defaulting party had pulled its crew off of a construction project and stated in writing that it would not complete unless the other party agreed to arbitration; in *Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*, 135 A.D.2d 891, 892, 522 N.Y.S.2d 292 (3rd Dep't 1987) the defaulting party had refused to sign off on a floor plan essential to obtain a liquor license and "refused to perform according to the terms of the agreement".

The case that controls here, as it controls on the issue of Paramount's obligation to serve a complying notice to start the cure period running, is *Filmline (Cross Country) Productions, Inc., v. United Artists Corp.*, 865 F.2d 513, 519 (2nd Cir. 1989).

4

There, in the context of production of a motion picture, the allegedly breaching party was entitled by agreement to a 30 day cure period to modify a script.  Since the potential evidence demonstrated that a potential cure was "far from futile", failure to trigger the cure period was fatal to the claim of termination.[3]

While not necessary to the argument, it is also true that repudiation requires an "overt communication of intention" not to perform.  In the case of repudiation inferred from conduct, that conduct must be "a definite and final communication of the intention to forego performance." *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 228 F.Supp.2d 293, 299-300 (S.D.N.Y. 2002), quoting from *Rachmani Corp. v. 9 East 96th Street Apt. Corp.*, 211 A.D.2d 262, 629 N.Y.S.2d 382, 385 (1st Dep't 1995).  By its own quotations from emails and its own description of communications between the parties, Paramount concedes that the WagerLogic parties intended at all times to make the December 2010 payment and informed Paramount of that intent.  Of course, payment was exactly what happened once Paramount sent its notice of termination triggering the cure period.  The suggestion that plaintiff's alleged statement to Paramount that it couldn't roll out the number of games required under the Agreement, see Def. Memo at 16, is an admission constituting repudiation is completely erroneous.[4] As demonstrated in P. Memo Point III, late roll out of games is not a "total breach" such as is required for repudiation under the *Norcon Power* case quoted above.  Repudiation just is not a genuine factual issue in this case.

---

[3] *Filmline* is a decision after trial, where testimony was given on whether the alleged breaching party had the power to revamp the script within the cure period.  Here, where the alleged breach is failure to send a check there is no factual issue to be resolved.

[4] Plaintiff denies the accuracy of the Paramount version of the January 26, 2011 conversation, as Paramount sets it out in its Counter-statement, par. 4.bb.  But because the alleged statement does not constitute an admission that there will be "total breach", but only a failure to roll out games that would result in loss of those movies to which such games were to be themed, the dispute is not over a material fact.

**POINT THREE**

**THERE IS NO GENUINE ISSUE OF MATERIAL FACT TO CONTROVERT PLAINTIFF'S ASSERTION THAT NO NOTICE OF TERMINATION WAS PROVIDED PRIOR TO FEBRUARY 23, 2011**

The Agreement requires that Paramount give WagerLogic thirty days prior written notice that Paramount "terminate[s] this Agreement." Par. 15.1. Paramount did not. Rather, the best it can do is argue that in an email it notified an employee of a Canadian subsidiary of CryptoLogic, Steve Quintin, "that WagerLogic had failed to perform its payment obligations and had missed a payment due from CryptoLogic back on December 1, 2010." "Thus", Paramount continues, on January 12, 2011, WagerLogic was fully aware and on notice that it had breached its obligations **and it had been asked to remedy."** Def. Memo at 18, emphasis added.

But the critical point here, overlooked by Paramount, aside from the fact that the January 12, 2012 email to CryptoLogic simply inquires as to the status of payment,  is that Paramount elected **not** to then commence the termination process by giving the contractually required 30 day notice.  Under *Filmline* and the plethora of cases discussed in P. Memo Point II, where there is a cure period, that period starts from a notice that the opposite party is terminating the agreement, not that they wanted a late payment.  A notice of termination must be precisely that.

Paramount suggests, Def. Memo at 18-19, that a writing that does not specify in so many words that it is a notice of termination nevertheless, and despite *Filmline*, can have the effect of triggering a cure period.  In the absence of a cure right, such an inquiry may be material and therefore may require a trial.  *McCaskey Davies & Associates v. New York City Health & Hospitals Corp.*, 59 N.Y.2d 755 (1983), and see discussion at P. Memo 13-16, elucidating the difference between contracts with and without a cure period.  But with a single exception, the law is consistent that cure

6

periods must be triggered by "formal notice of termination", to use the words of
*McCaskey*. That exception is *International Top Sports S.A. v. Pan Am. Sports Network
Int'l*, No. 01-CV-9668(HB), 2002 WL 72935 (S.D.N.Y. Jan. 17, 2002), in which the court
held that whether a notice and cure provision was intended by the parties to be
exclusive was an issue that ought not to be resolved prior to discovery. Plaintiff
respectfully suggests that the *International Top Sports* opinion is contrary to all the
subsequent opinions on point, set out at P. Memo 13-16, and ought not to be followed.

Also at page 19 of Def. Memo, Paramount contends that strict observance
of the notice provisions of the Agreement was not required. Every case Paramount
cites involves incontestable notice that a contract was being terminated, and forgives
notice by regular mail or fax rather than by the certified or registered mail called for in
the contract. We do not disagree; as we noted in the P. Memo at 15, discussing
*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*,
706 F. Supp.2d 350 (S.D.N.Y. 2009), if there is actual notice terminating or not
renewing a contract, the method of service, or delivery to one rather than another
addressee, is an excusable defect. But the issue here is not Paramount's using emails
rather than the Postal Service; the issue is that Paramount never until February 23,
2011 purported to terminate the Agreement.

Paramount writes that "WagerLogic received and responded to actual
notice of its breaches for nearly two months,..." Def. Memo at 19.[5] To be precise,
Paramount advised CryptoLogic, not WagerLogic, that payment was late, and
requested information concerning the status of the required payment. CryptoLogic, even
before any notice of termination, responded that it would make the payment. If

---

[5] There was in fact no mention of "breach" in the Paramount emails, which specifically state that the
payment issue is a matter that can be sorted out and remedied.

anything, the email exchanges establish that Paramount has waived any claim that time was of the essence regarding the December payment.

### POINT FOUR

### THERE IS NO CONFLICT BETWEEN THE REMEDY FOR TOTAL BREACH, WHICH INCLUDES A CURE PERIOD, AND THE REMEDY FOR LATE DELIVERY OF A PARICULAR GAME.  THUS THERE IS NO AMBIGUITY AND PARAMOUNT'S ATTEMPT TO TERMINATE THE AGREEMENT FOR LATE DELIVERY FAILS AS A MATTER OF LAW

As we demonstrated in P. Memo at 18-22, the remedy reserved by Paramount for failure to comply with a Marketing Date is loss of a game that was not rolled out in time.  See Section 10 of the Agreement[6].  Paramount simply ignores the plethora of cases we cited that require giving effect to all the relevant provisions of the Agreement, and claims both that extrinsic evidence is required to ascertain the intent of the parties, and that discovery is required to obtain such extrinsic evidence.  But the law requires that the provisions of the Agreement be read harmoniously, and as we pointed out, that can and must be done by applying the remedies in Section 10 of the Agreement for missing a marketing date, and the remedies in Section 15 of the Agreement that would support termination of the agreement, unless cured.  Section 10 has a limited remedy and no cure period; Section 15 has a termination remedy but includes a cure period.

Contrary to Paramount's suggestion that the two remedy provisions "reveal[ ] a conflict between those provisions which necessitates discovery," Def. Memo at 21, they are complementary, and each must be applied to the situation to which it is addressed.  See P. Memo, at 14-15.  Paramount's argument on this point rests on its

---

[6] Arguably, the failure to market is not even a breach of the Agreement as the Agreement contemplates that possibility and provides a specific remedy.  In any event, Section 10 clearly spells out the consequences of not marketing the minimum number of games.

8

misreading of *Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 429 (2nd Cir. 1992). *Seiden* addresses the questions of how to select one of two different approaches to the "interrelationship" of two contract provisions, not whether both provisions must be reconciled[7]. Since the two remedy provisions of the Agreement in the instant case can each be applied under our interpretation, while one must be eviscerated under the Paramount interpretation, to the extent *Seiden* applies it supports our motion for summary judgment on this point. Because the two remedies can easily be reconciled from the text of the Agreement itself, there is no conflict between them and hence, no ambiguity. There being no ambiguity, there is no need for the parties, and the court, to resort to extrinsic evidence.

## POINT FIVE

### THIS ACTION IS NOT BARRED BASED ON INCONSISTENT CLAIMS

The claim that WagerLogic's declaratory judgment is impermissible because of its breach claim is mistaken. Under Rule 56(g), FRCP, for example, the Court "may enter an Order stating any material fact … that is not genuinely in dispute and treating the fact as established in the case". Here the declaratory relief sought plaintiff's First Cause of Action is limited to interpretation of the clear and unambiguous languages of the contract at issue which is for the Court as a matter of law. Nothing more, nothing less. The *Lorterdan* case cited by Paramount (at p. 22) *Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Society of N.Y., Inc.,* 2012 U.S. Dist., Lexis 95693 at 37-38 (S.D.N.Y. 2012) emphatically declares that "under New

---

[7] Paramount points out that in *Seiden,* "each of two possible readings of one provision would 'denigrate the plain meaning' of the [other] provision." Def. Memo at 21, internal quote from *Seiden,* 959 F.2d at 429. As set forth in the text above, this hypothesized inconsistency is not applicable to the instant Agreement, where each remedy comfortably fits differing alleged defaults. In any event, it is highly doubtful that *Seiden* on this point survives the *Patsy's Italian Restaurant v. Banas,* 658 F3d. 254 (2nd Cir. 2011) decision of the Second Circuit in 2011, see P. Memo at 18, and a Westlaw search reveals that the quoted phrase has not been repeated in any case since *Seiden.*

9

York law, the interpretation of an unambiguous contract is a question of law for the Court". The ultimate relief sought here-whether specific performance or damages- does not diminish plaintiffs right to seek, or the Court's discretionary power to determine, as a matter of law certain facts that are not and cannot be genuinely in dispute.

## CONCLUSION

"[W]here it is clear that the non-moving party cannot defeat the motion by showing facts sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery." *XL Specialty Ins. Co. v. Agoglia*, Nos. 08 Civ. 3821, 08 Civ. 4196, 08 Civ. 5252 (GEL), 2009 WL 1227485, *6 (S.D.N.Y. Apr. 30, 2009). The WagerLogic motion for partial summary judgment should be granted.

Dated:  New York, New York
       September 28, 2012

                    ANDERSON KILL & OLICK, P.C.

                    By:  /S/ Jeffrey E. Glen (JG-8277)
                            Lawrence Kill (LK-2685)
                            Jeffrey E. Glen (JG-8277)
                            1251 Avenue of the Americas
                            New York, NY  10020
                            Tel: 212-278-1722

                          Attorneys for Plaintiff WagerLogic Limited

10