UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAGERLOGIC LIMITED,<br><br>    Plaintiff and Counter-Defendant,<br><br>    v.<br><br>PARAMOUNT DIGITAL ENTERTAINMENT, a division of PARAMOUNT PICTURES CORPORATION,<br><br>    Defendant and Counter-Plaintiff,<br><br>    v.<br><br>CRYPTOLOGIC LIMITED, GAMING PORTALS LIMITED, WAGERLOGIC CASINO SOFTWARE LIMITED, and AMAYA GAMING GROUP INC.,<br><br>    Third-Party Defendants. | 11 Civ. 4310 (BSJ) (DCF) |

**BRIEF OF THIRD-PARTY DEFENDANT AMAYA GAMING GROUP INC.
IN SUPPORT OF ITS MOTION TO DISMISS**

| | |
|---|---|
| Robert G. Rikard (*Pro Hac Vice* Application Pending)<br>RIKARD & PROTOPAPAS LLC<br>1329 Blanding Street<br>Columbia SC 29201<br>rgr@rplegalgroup.com<br>803-978-6111 | Paul J. Hanly, Jr.<br>Thomas I. Sheridan, III<br>HANLY CONROY BIERSTEIN SHERIDAN<br>   FISHER & HAYES LLP<br>112 Madison Avenue<br>New York, NY 10016<br>phanly@hanlyconroy.com<br>212-784-6401<br>tsheridan@hanlyconroy.com<br>212-784-6404 |

*Attorneys for Third-Party Defendant Amaya Gaming Group Inc.*

October 11, 2012

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................. 1

    Nature of Case; Course of Prior Proceedings ..................................................................... 1

    Relevant Parties .................................................................................................................... 3

    The Agreement ..................................................................................................................... 3

    The Third-Party Claims ....................................................................................................... 7

ARGUMENT ..................................................................................................................................... 8

    I.    THE THIRD PARTY COMPLAINT FAILS TO PLEAD FACTS TO SUPPORT *IN PERSONAM* JURISDICTION OVER AMAYA ................................................................ 8

        A.    Standards Governing This Motion ............................................................... 8

        B.    Paramount Has Not Made a *Prima Facie* Showing of Jurisdiction Under New York's Long-Arm Statute ................................................................... 9

        C.    The Exercise of In Personam Jurisdiction over Amaya Would Violate Due Process ................................................................................................. 10

    II.    THE THIRD PARTY COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST AMAYA ................................................................................................................... 11

        A.    Standards Governing This Motion ............................................................ 11

        B.    The Third-Party Complaint Fails to State a Claim against Amaya .......... 11

CONCLUSION ................................................................................................................................ 13

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Arar* v. *Ashcroft,* 585 F.3d 559 (2d Cir. 2009) ............... 11

*Ashcroft* v. *Iqbal,* 556 U.S. 662 (2009) ............... 11

*Avila v. Lease Fin. Group, LLC*, 11 CIV. 8125 KBF, 2012 WL 1948777 (S.D.N.Y. May 30, 2012) ............... 9

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239 (2d Cir. 2007) ............... 10

*D.H. Blair & Co.* v. *Gottdiener,* 462 F.3d 95 (2d Cir. 2006) ............... 9

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) ............... 11

*Jazini* v. *Nissan Motor Co., Ltd.,* 148 F.3d 181 (2d Cir. 1998) ............... 9

*Mazloum* v. *Int'l Commerce Corp.,* 829 F. Supp. 2d 223 (S.D.N.Y. 2011) ............... 8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ............... 13

*Papasan v. Allain*, 478 U.S. 265 (1986) ............... 11

*Penguin Grp. (USA) Inc.* v. *Am. Buddha,* 609 F.3d 30 (2d Cir. 2010) ............... 8

**Statutes and Rules**

CPLR 301 ............... 10

CPLR 302(a) ............... 9

Fed. R. Civ. P. 12(b)(6) ............... 11

## PRELIMINARY STATEMENT

Third-Party Defendant Amaya Gaming Group Inc. ("Amaya") respectfully submits this brief in support of its motion to dismiss the claims against it pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure for failure to establish personal jurisdiction and for failure to state a claim on which relief can be granted.

## STATEMENT OF FACTS

**Nature of Case; Course of Prior Proceedings**

In 2008, WagerLogic Limited ("WagerLogic") entered into a Licensing Agreement (the "Agreement") with Paramount Digital Entertainment, a division of Paramount Pictures Corporation ("Paramount"), pursuant to which WagerLogic obtained the right to use certain Paramount intellectual property to construct and market on line casino games themed to a set of motion pictures.

In February of 2011, Paramount purported to terminate the Agreement, claiming breach of the Agreement in two respects: (i) failure to make certain payments due under the Agreement by December 1, 2010 and (ii) failure to release five games themed to the Paramount pictures by a specified "Marketing Date." WagerLogic, denying these allegations and contending that the Agreement remained in effect, commenced this action for declaratory relief by filing a complaint on June 24, 2011.

Paramount served and filed an answer to the complaint, with counterclaims, on October 18, 2011. The counterclaims against WagerLogic sought monetary damages for alleged breach of the Agreement, a declaration that the Agreement was validly terminated, and monetary damages for copyright infringement. The counterclaims were also denominated a "Third-Party Complaint" against Cryptologic Limited ("Cryptologic"), the parent company of WagerLogic

and a guarantor under the Agreement, and against Gaming Portals Limited ("GPL"), which is also a subsidiary of Cryptologic.

WagerLogic answered the counterclaims, and moved for partial summary judgment on its claims for declaratory relief. After full briefing of the motion for partial summary judgment but before argument, WagerLogic on May 29, 2012 amended its complaint to add causes of action in two areas. The gravamen of the first cause of action in the amended complaint remains as it was in the original complaint; a request for a declaration that neither the alleged late payments nor the alleged late roll-out constitutes legal cause for termination of the Agreement.

Following the initiation of this action, Paramount also claimed that WagerLogic had violated an anti-assignment provision of the Agreement, initially through assigning or transferring Paramount's intellectual property to sister companies within the Cryptologic group, and later by virtue of the purchase of more than 50% of the stock of Cryptologic by Amaya. In its second claim for relief, WagerLogic seeks a declaration that the anti-assignment provision has not been violated and that the Agreement continues in effect.

In its third claim for relief, WagerLogic asserts that Paramount's refusal to provide various consents and authorizations it was required to provide under the Agreement has caused WagerLogic to be unable to roll out additional games, thus causing monetary damage.

On June 20, 2012, Paramount filed its amended answer to the amended complaint, including amended third-party complaints against Cryptologic and GPL, and adding third-party complaints against WagerLogic Casino Software Limited ("WL Casino") and against Amaya.

Neither Amaya nor WL Casino had been previously named in this action.

On July 11, 2012, WagerLogic filed its Answer to Paramount's First Amended and Supplemental Counterclaims. The same day Cryptologic, GPL, and WL Casino filed their answers to Paramount's Amended and Supplemental Third-Party Complaint.

WagerLogic has moved for partial summary judgment on the first cause of action in its complaint, leaving for subsequent litigation Paramount's claims – all of which WagerLogic denies – that WagerLogic breached obligations under the Agreement for which Paramount claims monetary damages, and leaving for subsequent litigation as well the allegations that the Agreement was terminable, or terminated, because of violation of its anti-assignment provision, and WagerLogic's own claims for monetary damages.

Amaya was not served by Paramount until September 5, 2012. It now moves to dismiss for lack of personal jurisdiction over Amaya and for failure to state a claim against Amaya.

**Relevant Parties**

Cryptologic, a Guernsey company located in Ireland (TPC ¶ 9), is the parent company of WagerLogic. Until 2012, its shares traded on the London Stock Exchange, the Toronto Stock Exchange, and the NASDAQ Stock Market. (TPC ¶ 103) Its shares are no longer publicly traded.

Amaya is a corporation organized under the laws of Quebec[1] with its principal place of business in Quebec. (TPC ¶ 12) On March 28, 2012, Amaya acquired approximately eighty percent (80%) of the issued share capital of Cryptologic. (TPC ¶ 99)

Paramount is a Delaware corporation located in California. (TPC ¶ 7)

**The Agreement**

In 2008, Paramount and WagerLogic entered into the Agreement pursuant to which Paramount granted WagerLogic an exclusive license to WagerLogic to use the character,

---

[1] The TPC says "laws of Canada," but this is inaccurate.

character names, themes, plots, storylines, settings, artwork, and other elements of certain films to create, market, and distribute online gambling games. (TPC ¶¶ 19-21)

Section 18.1 of the Agreement prohibited WagerLogic from "assign[ing], transfer[ing], delegate[ing], or sublicense[ing]" its rights and obligations without prior written consent of Paramount, in its sole discretion. (TPC ¶ 25)

Section 18.1 defines "assignment" as follows:

> [t]he transfer in the aggregate of thirty percent (30%) or more of the capital stock or voting power of [WagerLogic], or a change of a majority of the directors on the Board of Directors of [WagerLogic] as a result of a single event or series of connected events, shall be deemed an assignment for the purposes of this Agreement.

(TPC ¶ 26)

In accordance with Section 30 of the License Agreement, Cryptologic guaranteed the "full and timely performance of all obligations of WagerLogic under the terms and conditions of the License Agreement." (TPC ¶¶ 29-30)

According to Paramount, in the summer of 2010, WagerLogic materially breached Section 18.1 of the License Agreement by assigning, transferring and/or delegating its rights and obligations therein to non-signatories Gaming Portals, an Irish company, and WL Casino, a Maltese company, without disclosing the transactions or seeking Paramount's prior written consent. (TPC ¶¶ 34-54) These transactions are not alleged to have anything to do with Amaya.

According to Paramount, in or about September 2010, WagerLogic and Cryptologic allegedly breached the License Agreement in various other ways, but these too are not alleged to have anything to do with Amaya. (TPC ¶¶ 55-77)

On February 23, 2011, Paramount purported to terminate the License Agreement pursuant to Section 15.1. (TPC ¶ 78) Thereafter, according to Paramount, WagerLogic, Cryptologic, Gaming Portals, and WL Casino continued to use the licensed materials – claiming

4

that they had the contractual right to do so because the purported termination had been unwarranted. (TPC ¶ 79) This alleged unauthorized use is not alleged to have involved Amaya.

On December 15, 2011, Cryptologic's board announced a potential cash offer from Amaya to purchase all of the shares of Cryptologic. (TPC ¶ 94) Subsequently, Amaya acquired approximately 86% of Cryptologic's shares (TPC ¶ 101), and its shares are no longer publicly traded. (TPC ¶ 103)

Under the Agreement, a transfer of stock or change of control of *Cryptologic* does not constitute a prohibited assignment. Only a transfer of stock or change of control of *WagerLocic* can be a prohibited assignment. Paramount nowhere alleges that Amaya's purchase of shares of Cryptologic resulted in any "transfer in the aggregate of thirty percent (30%) or more of the capital stock or voting power of [WagerLogic], or a change of a majority of the directors on the Board of Directors of [WagerLogic]." (TPC ¶ 26, quoting Section 18.1) Thus, Paramount does not allege that there has been any "assignment" as that term is defined in the License Agreement.

In an effort to support its assertion that Amaya's purchase of publicly-traded shares of Cryptologic somehow violated the assignment provision in the Agreement, Paramount makes a variety of allegations. None of these, however, has any bearing on whether there was a prohibited "assignment" as that term is defined in the agreement. Thus, Paramount irrelevantly alleges that:

- Amaya "alluded to the Licensed Games in its press releases." (TPC ¶ 95)
- Amaya decided to purchase all of the shares of Cryptologic because, among other things, "Cryptologic's software and services offerings will provide an immediate complement to Amaya's gaming entertainment solutions platform." (TPC ¶ 96)

5

- "[A]n Amaya executive stated that, by way of Amaya's acquisition of Paramount [sic], Amaya would 'inherit [Paramount's] content' [and] that Amaya has 'big plans for [Paramount's] content.'" (TPC ¶ 97)

- The Amaya executive stated that he believed that "Paramount would be pleased with the change in management and control of Cryptologic." (TPC ¶ 98)

- As a result of the acquisition, key Cryptologic management personnel, including Cryptologic's CEO and CFO, were replaced with Amaya personnel. Additionally, two out of the four Cryptologic Directors were replaced by Amaya. (TPC ¶ 100)

- "Upon information and belief," WagerLogic, formerly wholly-owned and controlled by Cryptologic, is now controlled by Amaya. (TPC ¶ 102)

- Under the terms of the acquisition by Amaya, Cryptologic has applied, or will apply, for the delisting of its shares on the London Stock Exchange, the Toronto Stock Exchange and the NASDAQ Stock Market. (TPC ¶ 103)[2]

- As a result, the License Agreement and the Motion Picture Properties licensed thereunder are now in the control of Amaya, a non-signatory and unauthorized assignee. (TPC ¶ 104)

- Following the acquisition of Cryptologic stock by Amaya, WagerLogic, Gaming Portals and WL Casino continued to use the licensed properties. (TPC ¶ 105)

None of these allegations has any bearing on whether there was an "assignment" as that term is defined in the Agreement.

Paramount alleges that Amaya was "on notice" that its purchase of Cryptologic shares constituted an "assignment" that required Paramount's prior written consent because Amaya

---

[2] Cryptologic has in fact been fully delisted and deregistered from all three exchanges.

allegedly previously asked for Paramount's consent to a *completely unrelated transaction*. (TPC ¶¶ 107-110) Assuming the accuracy of Paramount's description of that unrelated transaction, however, that transaction involved a change ownership and control that did, in fact, constitute an "assignment" under the terms of the operative agreement – the terms of which are not the same as those at issue here. (TPC ¶ 111) Thus, Amaya's alleged request for consent in that transaction is completely immaterial to the entirely separate Cryptologic share purchase.

Despite its frequent, conclusory references to Amaya's indirect "control" of WagerLogic through its ownership of Cryptologic's shares, Paramount does not allege a single act performed by Amaya that is in any way related to WagerLogic's use of the licensed properties. Indeed, Paramount does not allege that WagerLogic's conduct changed in any material way at all after Amaya purchased stock of Cryptologic.

According to Paramount, "WagerLogic's guarantor under the License Agreement – Cryptologic – has been effectively been replaced by Amaya." (TPC ¶ 106) As we demonstrate below, this is nothing but an erroneous legal contention. There is no basis to believe that Cryptologic has ceased to be the guarantor; to the contrary, it is still the guarantor. Nor is there any basis to believe that and Amaya somehow became a guarantor by purchasing stock of the guarantor.

**The Third-Party Claims**

The First Counterclaim, which is asserted only against WagerLogic, purports to state a claim for breach of the License Agreement. Only two of the alleged breaches have any bearing on Amaya. First, Paramount claims that as a result of the purchase of Cryptologic shares by Amaya there was a violation of the provision in the License Agreement that prohibited WagerLogic from assigning its rights. (TPC ¶¶ 128-129) The facts alleged, however, actually establish conclusively that there was no "assignment" within the meaning of that term as defined

7

in the agreement. Second, Paramount claims that the acquisition by Amaya of Cryptologic shares has rendered Cryptologic "effectively subsumed, stripping the License Agreement of its requisite Guarantor and resulting in a material breach of Section 30 of the License Agreement." (TPC ¶ 132) As explained above, this is not a factual allegation; it is an erroneous legal contention.

The Second Counterclaim is a claim for a declaratory judgment against WagerLogic, Cryptologic, Gaining Portals, WL Casino, and Amaya. To the extent it relates to Amaya, however, it is based on the same groundless assertions that there was a breach of the assignment provision and an effective substitution of Amaya as a guarantor.

The Third Counterclaim is against WagerLogic, Cryptologic, Gaming Portals, WL Casino, and Amaya for copyright infringement. To the extent it relates to Amaya, this claim is based on the theory that following the acquisition of Cryptologic shares by Amaya, WagerLogic, Gaming Portals, and WL Casino continued to do what they had been doing previously – but now they were "under Amaya's control" because Amaya owned the stock of Cryptologic. (TPC ¶ 154) There is no allegation that Amaya itself infringed or that it used its "control" to cause any infringement – which Paramount alleges was ongoing at the time of the stock purchase.

## ARGUMENT

### I. THE THIRD PARTY COMPLAINT FAILS TO PLEAD FACTS TO SUPPORT *IN PERSONAM* JURISDICTION OVER AMAYA

#### A. Standards Governing This Motion

A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit. *Penguin Grp. (USA) Inc.* v. *Am. Buddha,* 609 F.3d 30, 34 (2d Cir. 2010). A plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would "lack the factual specificity necessary to confer jurisdiction." *Mazloum* v. *Int'l Commerce Corp.,* 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011), *quoting Jazini* v. *Nissan*

8

*Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998). In considering this motion, this Court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Mazloum,* 2011 WL 5331705, at *2 (internal quotations omitted). *See generally Avila v. Lease Fin. Group, LLC*, 11 CIV. 8125 KBF, 2012 WL 1948777 (S.D.N.Y. May 30, 2012) (dismissing complaint for lack of *in personam* jurisdiction for failure to satisfy CPLR 302(a)).

### B. Paramount Has Not Made a *Prima Facie* Showing of Jurisdiction Under New York's Long-Arm Statute

In diversity cases, the court applies the law of the forum state in determining whether it has personal jurisdiction over a defendant. *D.H. Blair & Co.* v. *Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006).

Paramount alleges that this Court has personal jurisdiction over Amaya pursuant to New York's long-arm statute, CPLR 302(a), which authorizes the Court to exercise personal jurisdiction over a non-domiciliary defendant who:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

9

CPLR 302(a).[3] Paramount fails to establish jurisdiction under any of these subsections.

Paramount does not allege that Amaya transacts business or owns property in New York, precluding jurisdiction under subsection (1) or (4) of C.P.L.R. § 302(a). An out-of-state defendant "transacts business" under CPLR 302(a)(1) when it purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246-47 (2d Cir. 2007). There must be "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* at 246. Paramount alleges neither any transaction of business in New York nor any nexus between its claims and actions that occurred in New York.

Paramount's second counterclaim is a breach of contract claim that cannot trigger subsections (2) or (3), because those subsections only involve torts.

Nor does the third counterclaim for copyright infringement satisfy subsections (2) or (3). Subsection (2) requires a tortious act in New York, but the Third Party Complaint does not allege any tortious act by Amaya in New York. Subsection (3) requires injury in New York, but Paramount is a Delaware company located in California. It suffered no injury in New York.

### C.    The Exercise of In Personam Jurisdiction over Amaya Would Violate Due Process

In order for this Court to exercise jurisdiction over Amaya consistent with the due process clause of the United States Constriction, Paramount must establish Amaya has "minimum contacts with [New York] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of*

---

[3] Paramount also cites CPLR 301, but this merely provides, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."

*Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). Nothing in the Third-Party complaint remotely suggests that this test can be met.

## II.   THE THIRD PARTY COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST AMAYA

Even if the Court rules that it may exercise jurisdiction over Amaya, it should dismiss Paramount's claims for failure to state a claim. Both of Paramount's claims against Amaya fail as a matter of law.

### A.   Standards Governing This Motion

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint shall be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court "accept[s] as true the factual allegations of the complaint, and construe[s] all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar* v. *Ashcroft,* 585 F.3d 559, 567 (2d Cir. 2009).

On a motion to dismiss, however, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). As set forth in *Ashcroft* v. *Iqbal,* 556 U.S. 662 (2009), a court's review of a Rule 12(b)(6) motion involves a two-step analysis. First, the court identifies and disregards allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 664. Second, the court determines whether, in light of alternative explanations for the facts properly alleged, the non-conclusory allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. Here, Paramount's claims do not survive the first step of the analysis.

### B.   The Third-Party Complaint Fails to State a Claim against Amaya

Paramount's allegations that the purchase on the open market by Amaya of a majority of the shares of Cryptologic cannot possibly trigger the anti-assignment provision of the

11

Agreement, which by its terms applies only to transfers of shares of WagerLogic. Paramount nowhere alleges that Amaya's purchase of shares of Cryptologic resulted in any "transfer in the aggregate of thirty percent (30%) or more of the capital stock or voting power of [WagerLogic], or a change of a majority of the directors on the Board of Directors of [WagerLogic]." (TPC ¶ 26, quoting Section 18.1) Thus, Paramount does not allege that there has been any "assignment" as that term is defined in the License Agreement as a result of Amaya's purchase of shares of Cryptologic.

Paramount alleges that Amaya was "on notice" that its purchase of Cryptologic shares constituted an assignment that required Paramount's prior written consent because Amaya had actually asked for Paramount's consent to an unrelated transaction. Amaya's request for consent in that other transaction is completely immaterial, however, because the terms of the operative contracts were different.

Paramount alleges that the acquisition by Amaya of Cryptologic shares resulted in Amaya becoming substituted for Cryptologic as the guarantor under the Agreement. That is nonsense. Cryptologic remains the guarantor. Amaya became a shareholder of the guarantor – not the guarantor.

Thus, the First and Second Counterclaims fail to state a claim against Amaya.

The Third Counterclaim for copyright infringement also fails to state a claim against Amaya, because to the extent it relates to Amaya at all, it is based on the theory that following the acquisition of Cryptologic shares by Amaya, WagerLogic, Gaming Portals, and WL Casino continued to use the licensed materials while "under Amaya's control." (TPC ¶ 154) There is no authority, however for the imposition of copyright liability on the indirect controlling shareholder of an alleged copyright infringer. Paramount is improperly seeking to pierce the

corporate veil without making any allegations that would support veil-piercing. Paramount fails to allege any conduct by Amaya that could even arguably warrant imposing secondary liability for copyright infringement. *See generally Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005).

## CONCLUSION

The motion to dismiss for lack of personal jurisdiction and for failure to state a claim should be granted.

Dated: October 11, 2012

    Respectfully submitted,

    /s/ Paul J. Hanly, Jr.
        Paul J. Hanly, Jr.
        Thomas I. Sheridan, III

    HANLY CONROY BIERSTEIN SHERIDAN
      FISHER & HAYES LLP
    112 Madison Avenue
    New York, NY 10016
    212-784-6401
    phanly@hanlyconroy.com
    212-784-6404
    tsheridan@hanlyconroy.com

        and

    Robert G. Rikard (*Pro Hac Vice* Application Pending)
    RIKARD & PROTOPAPAS LLC
    1329 Blanding Street
    Columbia SC 29201
    rgr@rplegalgroup.com
    803-978-6111

    *Attorneys for Third-Party Defendant Amaya Gaming Group Inc.*